UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

JOBAR HOLDING CORPORATION, ROBERT BUCK,
Individually, and ROBERT BUCK, as Executor of the
Estate of JOAN BUCK, and ROBERT BUCK, individually
and ROBERT BUCK, As Executor of the Estate of JOAN
BUCK, derivatively as shareholders on behalf of JOBAR
HOLDING CORPORATION,

    **Case No.:**
    **1:23-cv-11217 (JGLC) (GS)**

        Plaintiffs,

   -against-

DAVID HALIO,

        Defendant.
--------------------------------------------------------------------X

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Dated: Jamaica, New York
     February 29, 2024

**SAGE LEGAL LLC**

*/s/ Emanuel Kataev, Esq.*__
Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, NY 11423-2327
(718) 412-2421 (office)
(917) 807-7819 (cellular)
(718) 489-4155 (facsimile)
emanuel@sagelegal.nyc

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

STANDARD OF REVIEW .................................................................................... 3

    **i.**    **Rule 12(b)(1)** ................................................................................... 3

    **ii.**    **Rule 12(b)(6)** ................................................................................. 5

    **iii.**    **Documents Other than the Complaint may be Considered** ........................... 5

FACTS ................................................................................................................ 6

ARGUMENT ...................................................................................................... 8

    **I.**    **THE STATUTE OF LIMITATIONS BARS RELIEF TO THE PLAINTIFFS** ........................................................................................ 8

    **II.**    **COLARADO RIVER ABSTENTION REQUIRES DISMISSAL OF THE COMPLAINT** ................................................................................. 10

    **III.**    **THE RICO CLAIMS ARE IRRETRIEVABLY DEFECTIVE** ................. 12

        **A.Plaintiffs Fail to Properly Plead an Association-in-Fact Enterprise** ...... 14

        **B. The Complaint Does not Allege the Continuity Required to Establish a "Pattern"** ................................................................................. 18

        **C. The Complaint Does not Allege an "Open-Ended" Pattern of Racketeering Activity** .................................................................. 21

        **D. Plaintiffs RICO Conspiracy Claims Under 18 U.S.C. § 1962(d) Must be Dismissed** ................................................................................. 23

    **IV.**    **This Court Should Decline to Exercise Supplemental Jurisdiction** ........... 24

## TABLE OF AUTHORITIES

**Cases**

2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assurance Co.,
717 Fed. Appx. 35 (2d Cir. 2017) ........................................................................... 9

Abbott Labs v. Adelphia Supply USA,
2017 U.S. Dist. LEXIS 1007 (E.D.N.Y. 2017) .................................................. 16

Abramo v. Teal, Becker & Chiarmonte,
713 F.Supp.2d 96 (N.D.N.Y. 2010) .............................................................. 18, 19

Albunio v. Int'l Safety Grp.,
2016 WL 1267795 (S.D.N.Y. Mar. 30, 2016) .................................................. 21

Alix v. McKinsey & Co., Inc.,
No. 18-CV-4141 (JMF), 2023 WL 5344892 (S.D.N.Y. Aug. 18, 2023) ........................... 8

Am. Fed'n of State v. Bristol-Myers Squibb Co.,
948 F. Supp. 2d 338 (S.D.N.Y. 2012) ................................................................. 1

Am. Med. Ass'n v. United Healthcare Corp.,
588 F. Supp. 2d 432 (S.D.N.Y. 2008) ............................................................... 22

Amsterdam Tobacco Inc. v. Philip Morris  Inc.,
107 F. Supp. 2d 210 (S.D.N.Y. 2000) ............................................................... 17

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ............................................................................................ 5

Atl. Gypsum Co., Inc. v. Lloyds Intern. Corp.,
753 F. Supp. 505 (S.D.N.Y. 1990) ................................................................... 23

ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,
493 F.3d 87 (2d Cir. 2007) ................................................................................. 6

Ayers v. Piaker & Lyons, P.C.,
748 Fed. Appx. 368 (2d Cir. 2018) ..................................................................... 9

Azrielli v. Cohen Law Offices,
21 F.3d 512 (2d Cir. 1994) .......................................................................... 12, 13

Baldessarre v. Monroe–Woodbury Cent. Sch. Dist.,
820 F. Supp. 2d 490 (S.D.N.Y. 2011) .......................................................... 3 n. 1

Baldessarre v. Monroe–Woodbury Cent. Sch. Dist.,
    496 Fed. Appx. 131 (2d Cir. 2012) ........................................................... 3 n. 1

Bankers Tr. Co. v. Rhoades,
    859 F.2d 1096 (2d Cir. 1988) ..................................................................... 9

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)) .................................................................................. 5

Blue Tree Hotels Inv. (Can.), Ltd., v. Starwood Hotels & Resorts Worldwide, Inc.,
    369 F.3d 212 (2d Cir. 2004) ........................................................................ 6

Boyle v. United States,
    556 U.S. 938 (2009) ............................................................................. 14, 15

BWP Media USA, Inc. v. Hollywood Fan Sites, LLC,
    69 F. Supp. 3d 342 (S.D.N.Y. 2014) ......................................................... 23

Castellano v. Bd. of Trustees,
    937 F.2d 752 (2d Cir. 1991) ...................................................................... 25

Chambers v. Wright,
    No. 05-CIV.-9915 (WHP), 2007 WL 4462181 (S.D.N.Y. Dec. 19, 2007) ....................... 3

City of N. Y v. Smokes-Spirifs.com, Inc.,
    541 F.3d 425 (2d Cir. 2008) ...................................................................... 13

Cofacredit, S.A. v. Windsor Plumbing Supply Co.,
    187 F.3d 229 (2d Cir. 1999) ................................................................. 12, 21

Cohen v. S.A.C. Trading Corp.,
    711 F.3d 353 (2d Cir. 2013) ........................................................................ 8

Colorado River Water Conservation Dist. v. U.S.,
    424 U.S. 800 (1976) ...................................................................... 2, 4, 10, 11

Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC,
    2012 U.S. Dist. LEXIS 51841 (S.D.N.Y. 2012) .......................................... 16

Conte v. Newsday, Inc.,
    703 F. Supp. 2d 126 (E.D.N.Y. 2010) .................................................. 15, 17

Cosmos Forms Ltd. v. Guardian Life Ins. Co.,
    113 F.3d 308, 310 (2d Cir. 1997) ...................................................... 15, 17, 18

De Sole v. Knoedler Gallery, LLC,
    2013 U.S. Dist. LEXIS 142111 (S.D.N.Y. Sep. 30, 2013) ........................... 13

Dittmer v. Cty. of Suffolk,
    146 F.3d 113 (2d Cir. 1998)) ................................................................ 4

DLJ Mortg. Capital, Inc. v. Kontogiannis,
    726 F. Supp. 2d 225 (E.D.N.Y. 2010) ............................................. 1, 2

Dulsky v. Worthy,
    2013 WL 4038604 (S.D.N.Y. July 30, 2013) .................................... 23

Econ. Opportunity Comm'n v. Cnty. of Nassau,
    47 F. Supp. 2d 353 (E.D.N.Y. 1999) ................................................ 22

Elsevier, Inc. v. Grossman,
    2013 WL 6331839 (S.D.N.Y. Dec. 5, 2013) ...................................... 14

F.D.I.C. v. Four Star Holding Co.,
    178 F.3d 97 (2d Cir. 1999).................................................................. 4

FD Prop. Holding, Inc. v. U.S. Traffic Corp.,
    206 F. Supp. 2d 362 (E.D.N.Y. 2002) ......................................... 19, 24

Fernandez v. City of New York,
    2017 WL 2894144 (S.D.N.Y. July 7, 2017) ........................................ 4

Figueroa Ruiz v. Alegria,
    896 F.2d 645 (1st Cir. 1990).............................................................. 1

First Capital  Asset Mgmt., Inc. v. Satinwood, Inc.,
    385 F.3d 159 (2d Cir. 2004)......................................................... 18, 25

Flexborrow LLC v. TD Auto Fin. LLC,
    255 F. Supp. 3d 406 (E.D.N.Y. 2017) ............................................... 19

Foster v. 2001 Real Estate,
    2015 WL 7587360 (S.D.N.Y. Nov. 24, 2015)..................................... 15

Frederick v Wells Fargo Home Mtge.,
    2015 US Dist. LEXIS 41328 (E.D.N.Y. 2015).................................... 16

GICC Capital  Corp. v. Tech. Fin. Group, Inc.,
    67 F.3d 463 (2d Cir. 1995).................................................................. 18

Goldfine v. Sichenzia,
    118 F. Supp. 2d 392 (S.D.N.Y. 2000)................................................ 23

Grace International v. Festa,
    2019 WL 1369000 (E.D.N.Y., Mar. 26, 2019)............................... 18, 22

Greenberg v. Blake,
      2010 WL 2400064 (E.D.N.Y. June 10, 2010) .................................................. 15

Gross v. Waywell,
      628 F. Supp. 2d 475 (S.D.N.Y. 2009) ......................................................... 2, 12

H.J. Inc., et al. v.  Northwestern Bell Tel. Co.,
      492 U.S. 229 (1989) ............................................................................. 14, 18, 20

Halvorssen v. Simpson,
      2020 U.S. App. LEXIS 8512 (2d. Cir. 2020) ................................................. 19

*In re* Buck v. Jobar Holding Corp.,
      Index No.: 605680/2016 (Nassau County Supreme Court) ............................... 9

*In re* Comverse Tech., Inc.,
      06-CIV.-1849 (NGG) (RER), 2006 WL 3193709 (E.D.N.Y. Nov. 2, 2006) .................... 4

Int'l Bhd. of Teamsters v. Blitz,
      124 Fed. Appx. 41 (2d Cir. 2005) .................................................................... 22

Int'l Bhd. of Teamsters v. Carey,
      297 F.  Supp. 2d 706 (S.D.N.Y. 2004) ............................................................. 22

J.S. ex rel. N.S. v. Attica Cent. Sch.,
      386 F.3d 107 (2d Cir. 2004) .............................................................................. 3

Jobar Holding Corp. v. Halio,
      Index No.: 655689/2017 (New York County Supreme Court) ..................... 8, 11

Katzman v. Victoria's Secret Catalogue,
      167 F.R.D. 649 (S.D.N.Y. 1996) ....................................................................... 1

Katzman v. Victoria's Secret Catalogue,
      113 F.3d 1229 (2d Cir. 1997) ............................................................................ 1

Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co.,
      342 U.S. 180 (1952) .......................................................................................... 4

Koch v. Christie's Int'l PLC,
      699 F.3d 141 (2d Cir. 2012) .......................................................................... 8, 9

LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co.,
      951 F. Supp. 1071 (S.D.N.Y. 1996) ................................................................ 17

Levy v. Southbrook Int'l Investments, Ltd.,
      263 F.3d 10 (2d Cir. 2001) ................................................................................ 5

iv

Levy v. Southbrook Int'l Investments, Ltd.,
    535 U.S. 1054 (2002) .................................................................. 5

Magee v. Nassau Cnty. Med. Ctr.,
    27 F. Supp. 2d 154 (E.D.N.Y. 1998) ........................................ 3

Makarova v. United States,
    201 F.3d 110 (2d Cir. 2000) .................................................. 3, 6

Miranda v. Ponce Fed. Bank,
    948 F.2d 41 (1st Cir. 1991) ...................................................... 1

Morrison v. Nat'l Australia Bank Ltd.,
    547 F.3d 167 (2d Cir. 2008) ...................................................... 3

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
    460 U.S. 1 (1983) .................................................................... 10

Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,
    102 F.3d 660 (2d Cir. 1996) ...................................................... 6

Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.,
    673 F.3d 84 (2d Cir. 2012) ...................................... 4, 10, 11 n. 4

O'Malley v. N.Y.C. Transit Auth.,
    896 F.2d 704 (2d Cir. 1990) .................................................... 23

Ray Larsen Assocs., Inc. v. Nikko Am., Inc.,
    No. 89 CIV. 2809, 1996 WL 442799 (S.D.N.Y. Aug. 6, 1996) ...................................... 19

Redtail Leasing, Inc. v. Bellezza,
    1997 U.S. Dist. LEXIS 14821 (S.D.N.Y. Sep. 30, 1997) ................................. 13

Reich v. Lopez,
    858 F.3d 55 (2nd Cir. 2017) ................................................ 20, 21

Reves v. Ernst & Young,
    507 U.S. 170 (1993) ............................................................ 13, 17

Rosenson v. Mordowitz, 2012
    U.S. Dist. LEXIS 120077 (S.D.N.Y. Aug. 23, 2012) ...................................... 1

Rotella v. Wood,
    528 U.S. 549 (2000) .................................................................. 8

Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.,
    466 F.3d 88 (2d Cir. 2006) ...................................................... 10

Schlaifer Nance & Co. v. Estate of Warhol,
    119 F.3d 91 (2d Cir. 1997)......................................................................... 18, 19

Shields v. Murdoch,
    No. 11-CIV.-4917 (PGG), 2012 WL 4097199 (S.D.N.Y. Sept. 18, 2012)........... 4, 11 n. 4

Shipping Fin. Servs. Corp. v. Drakos,
    140 F.3d 129 (2d Cir. 1998)........................................................................ 3

Singh v. Parnes,
    199 F. Supp. 2d 152 (S.D.N.Y. 2002)............................................................ 15

Spool v. World Child Int'l Adoption Ag.,
    520 F.3d 178 (2d Cir. 2008)........................................................................ 12

Spoto v. Herkimer County Trust,
    2000 WL 533293 (N.D.N.Y, Apr. 27, 2000)................................................. 18, 21

Superior Site Work, Inc. v NASDI, LLC,
    No. 14-CIV.-1061 (ADS) (SIL), 2017 WL 384325 (E.D.N.Y. Jan. 23, 2017) ............... 12

TPTCC NY, Inc. v. Radiation Therapy Servs.,
    453 Fed. Appx. 105 (2d Cir. 2011).............................................................. 25

United States v. Aulicino,
    44 F.3d 1102 (2d Cir. 1995)........................................................................ 21, 22

United States v. Burden,
    600 F.3d 204 (2nd Cir. 2010)...................................................................... 21

United States v. Turkette,
    452 U.S. 576 (1981).................................................................................... 14

Wee v. Rome Hosp.,
    1996 WL 191970 (N.D.N.Y., Apr. 15, 1996)................................................ 19

Woodford v. Cmty. Action Agency of Greene County, Inc.,
    239 F.3d 517 (2d Cir. 2001)........................................................................ 10

World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.,
    328 Fed. Appx. 695 (2d Cir. 2009).............................................................. 8, 9

World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc.,
    699 F.3d 141 (2d Cir. 2012)........................................................................ 8, 9

York Hunter Const., Inc. v Avalon Properties, Inc.,
    104 F. Supp. 2d 211 (S.D.N.Y. 2000).......................................................... 12

Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi,
    215 F.3d 247, 253 (2d Cir. 2000) ........................................................................... 3

**Statutes**

18 U.S.C. § 1961 ................................................................................................................. 14

18 U.S.C. § 1962 ............................................................................................. 12, 13, 16, 17, 23

28 U.S.C. § 1331 ................................................................................................................. 25

28 U.S.C. § 1367 ............................................................................................................ 24, 25

New York Civil Practice Law & Rules, Rule 3014 .............................................................. 5 n. 2

**Rules**

Fed. R. Civ. P. 8 .......................................................................................................... 5, 5 n. 2

Fed. R. Civ. P. 9 ................................................................................................................ 1, 6

Fed. R. Civ. P. 12 ...................................................................................................... 1, 3, 5, 6, 16

Defendant Dr. David Halio (hereinafter "Dr. Halio" or the "Defendants") respectfully submits this memorandum of law in support of his motion, pursuant to Rules 12(b)(1), 12(b)(6), and 9(b) of the Federal Rules of Civil Procedure (hereinafter "Rules" or "Rule"), to dismiss the third and fourth causes of action of Plaintiffs' complaint, under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), with prejudice, and to decline to exercise supplemental jurisdiction over the remaining causes of action set forth in the complaint.

## PRELIMINARY STATEMENT

"[I]t is well known that the federal courts are flooded with cases molded to the RICO form, even though they are truly little more than garden variety claims for fraud." See Am. Fed'n of State v. Bristol-Myers Squibb Co., 948 F. Supp. 2d 338, 345 (S.D.N.Y. 2012) (citing Rosenson v. Mordowitz, 2012 U.S. Dist. LEXIS 120077, at *12 (S.D.N.Y. Aug. 23, 2012)). "Consequently, courts have an obligation to scrutinize civil RICO claims early in the litigation [to] separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." See Am. Fed'n of State, 948 F. Supp. at 345 (quoting Rosenson, 2012 U.S. Dist. LEXIS 12007, at *13).

It must be noted that courts have described civil RICO as "'an unusually potent weapon—the litigation equivalent of a thermonuclear device.'" See Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), aff'd, 113 F.3d 1229 (2d Cir. 1997) (quoting Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir. 1991)). "Because the 'mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" Id. (quoting Figueroa Ruiz v. Alegria, 896 F.2d 645, 650 (1st Cir. 1990)); see also DLJ Mortg. Capital, Inc. v. Kontogiannis, 726 F. Supp. 2d 225 (E.D.N.Y. 2010).

Indeed, although civil RICO may be a "potent weapon," plaintiffs wielding RICO almost always miss the mark. See Gross v. Waywell, 628 F. Supp. 2d 475, 479-83 (S.D.N.Y. 2009) (conducting survey of 145 civil RICO cases filed in the Southern District of New York from 2004 through 2007 and finding that all thirty-six cases resolved on the merits resulted in judgments against the plaintiffs, mostly at the motion to dismiss stage).

Accordingly, courts have expressed skepticism toward civil RICO claims. See, e.g., DLJ Mortg. Capital, 726 F. Supp. 2d at 236 ("[P]laintiffs have often been overzealous in pursuing RICO claims, flooding federal courts by dressing up run-of-the-mill fraud claims as RICO violations.").

Here, Plaintiffs plead that Dr. Halio conspired with his mother, a defendant in a related state court action, to ensure that the Plaintiffs did not receive their fair share of the assets held by Jobar Holding Corporation ("Jobar"); this is not a RICO claim, and the sensationalized allegations in the complaint properly paint this case as part of a decades-long family vendetta by Robert Buck ("Buck"), who was estranged from the family for years and years until after his mother passed away.  For a multitude of reasons, these dubious run-of-the-mill breach of contract and fraud claims – which are brought in an effort to engage in scorched earth litigation as part of Buck's family vendetta – can never be molded to fit the RICO form.

For one, the existence of parallel state-court litigation renders this case dismissed under the Colorado River abstention doctrine.  Moreover, Plaintiffs' RICO claims are defective and fail to state a claim upon which relief can be granted, both on the merits of the unnecessarily long allegations and on statute of limitations grounds as the transactions complained of occurred more than four (4) years ago.  Finally, this Court should not exercise its discretion to have supplemental jurisdiction over the remaining state law claims because no federal question exists and exile this case back to state court where it belongs.

2

Accordingly, this Court must dismiss the RICO claims and decline to exercise supplemental direction over the remaining state law claims.

## STANDARD OF REVIEW

i.     <u>Rule 12(b)(1)</u>

Rule 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case. <u>See</u> Fed. R. Civ. P. 12(b)(1). The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. <u>See</u> <u>Morrison v. Nat'l Australia Bank Ltd.</u>, 547 F.3d 167, 170 (2d Cir. 2008) (quoting <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000)). "On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings...." <u>See</u> <u>Zappia Middle East Constr. Co. Ltd. v. Emirate of Abu Dhabi</u>, 215 F.3d 247, 253 (2d Cir. 2000). When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true but does not draw inferences from the complaint favorable to the plaintiff. <u>See</u> <u>J.S. ex rel. N.S. v. Attica Cent. Sch.</u>, 386 F.3d 107, 110 (2d Cir. 2004) (citing <u>Shipping Fin. Servs. Corp. v. Drakos</u>, 140 F.3d 129, 131 (2d Cir. 1998)).

Where, as here, a party also seeks dismissal on Rule 12(b)(6) grounds, the court must consider the Rule 12(b)(1) motion first,[1] because "disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." <u>See</u> <u>Chambers v. Wright</u>, No. 05-CIV.-9915 (WHP), 2007 WL 4462181, at *2 (S.D.N.Y. Dec. 19, 2007) (quoting <u>Magee v. Nassau Cnty. Med. Ctr.</u>, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)).

---

[1] <u>See</u> <u>Baldessarre v. Monroe–Woodbury Cent. Sch. Dist.</u>, 820 F. Supp. 490, 499 (S.D.N.Y. 2011), <u>aff'd</u>, 496 Fed. Appx. 131 (2d Cir. 2012).

Federal courts may abstain from exercising jurisdiction over an action for which there is a parallel state court proceeding based on considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." See Colorado River Water Conservation Dist. v. U.S., 424 U.S. 800, 817 (1976) ("Colorado River") (quoting Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183 (1952)).

A district court may *sua sponte* challenge subject matter jurisdiction, including through abstention principles. See F.D.I.C. v. Four Star Holding Co., 178 F.3d 97, 100 n.2 (2d Cir. 1999) (finding that a district court or appellate court could *sua sponte* address subject matter jurisdiction and applying Colorado River abstention principles).

"An analysis of whether a court should abstain under Colorado River begins with a determination of whether the concurrent federal and state proceedings are 'parallel' in nature." See Fernandez v. City of New York, 2017 WL 2894144, at *2 (S.D.N.Y. July 7, 2017) (citing Dittmer v. Cty. of Suffolk, 146 F.3d 113, 118 (2d Cir. 1998)).

Federal and state proceedings are "parallel" for abstention purposes when "substantially the same parties are contemporaneously litigating substantially the same issue in another forum." See Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 100 (2d Cir. 2012) ("Niagara").

Crucially, "[p]erfect symmetry of parties and issues is not required. Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." See Shields v. Murdoch, No. 11-CIV.-4917 (PGG), 2012 WL 4097199, at *5 (S.D.N.Y. Sept. 18, 2012) ("Shields") (quoting In re Comverse Tech., Inc., 06-CIV.-1849 (NGG) (RER), 2006 WL 3193709, at *2 (E.D.N.Y. Nov. 2, 2006)) (internal quotations marks omitted).

ii.    <u>Rule 12(b)(6)</u>

To survive a motion to dismiss under Rule 12(b)(6), Plaintiff must allege in its complaint facts that, if accepted as true, "state a claim to relief that is plausible on its face." <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (<u>quoting</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

To meet this plausibility standard, Plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged. <u>Id.</u>

A complaint must contain "a *short and plain statement*[2] of the claim showing that the pleader is entitled to relief." <u>See</u> Fed. R. Civ. P. 8(a)(2).  Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>See</u> <u>Iqbal</u>, 556 U.S. at 678.

"[O]n a motion to dismiss[,] a court must accept all factual allegations as true and draw all reasonable inferences in the plaintiffs favor." <u>See</u> <u>Levy v. Southbrook Int'l Investments, Ltd.</u>, 263 F.3d 10, 14 (2d Cir. 2001), <u>cert.</u> <u>denied</u>, 535 U.S. 1054 (2002) (citations omitted).

However, the Court need not accept legal conclusions as true. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678. And "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" <u>Id.</u> (<u>quoting</u> <u>Twombly</u>, 550 U.S. at 557).  Determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>See</u> <u>Iqbal</u>, 556 U.S.at 679.

---

[2] The import of Rule 8 and its state-court counterpart under Rule 3014 of the New York Civil Practice Law & Rules ("CPLR"), requiring pleadings to consist of short, plain, and/or concise statements, was apparently lost on the Plaintiffs.

Further, where – as here – Plaintiff bases claims sounding in fraud, they are also subject to the heightened pleading requirements of Rule 9(b), which requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." <u>See</u> Fed. R. Civ. P. 9(b).

To satisfy this requirement, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. Allegations that are conclusory or unsupported by factual assertions are insufficient." <u>See</u> <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 99 (2d Cir. 2007).

iii.   <u>Documents Other than the Complaint may be Considered</u>

While a district court deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim ordinarily "must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference,"[3] "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court ... may refer to evidence outside the pleadings." <u>See</u> <u>Makarova</u>, 201 F.3d at 113 (2d Cir. 2000).

Additionally, under either standard the court may take judicial notice of documents in the public record, including state court filings. <u>See</u> <u>Blue Tree Hotels Inv. (Can.), Ltd., v. Starwood Hotels & Resorts Worldwide, Inc.</u>, 369 F.3d 212, 217 (2d Cir. 2004).

**FACTS**

Cake Masters was a family bakery that operated until in or about 1990. <u>See</u> ECF Docket Entry <u>1-1</u> ¶ 21.  After it ceased operating as a bakery, it continued in its business of owning and leasing commercial real estate located at 120 West 72nd Street, New York, NY. <u>Id.</u>

---

[3] <u>See</u> <u>Newman & Schwartz v. Asplundh Tree Expert Co., Inc.</u>, 102 F.3d 660, 662 (2d Cir. 1996).

The property was sold on May 12, 2006 and all proceeds from the sale save for $1,500,000.00 (the "Holdback") were distributed to creditors and shareholders. <u>Id.</u> ¶ 22. The Holdback was money set aside in the event of any claims, disputes, or obligations that existed related to Jobar. <u>Id.</u> ¶ 9.

Buck and the Estate of Joan Buck (the "Estate"), of which Buck is the executor, collectively owned a thirty-eight percent (38%) interest in Jobar at the time of the sale, with Buck owning eight percent (8%) and the Estate owning thirty percent (30%). <u>Id.</u> ¶ 23; <u>see</u> <u>also</u> <u>Id.</u> ¶¶ 10-11. Dr. Halio holds a twelve-and-a-half percent (12.5%) interest in Jobar. <u>Id.</u> ¶¶ 24, 37. His mother is also a shareholder and officer of Jobar. <u>Id.</u> ¶ 8.

Plaintiffs allege that Dr. Halio engaged in wire fraud by accepting monies from the Holdback funds and filing Internal Revenue Service ("IRS") Form K-1's from Jobar in relation to certain funds that were loaned, and Plaintiffs protest the nature and characterization of these funds as loans. <u>Id.</u> ¶¶ 26, 28, 73, and 79.

Other than generally alleging wire fraud, the complaint is mostly bereft of any detail as to the amount of the transfers and when these wire transfers occurred; even when amounts are provided, the pleadings are still bare as to when. <u>Id.</u> ¶¶ 3 (referencing $200,000.00 in 2017, including $20,000.00 on March 2, 2013, $10,000.00 on April 12, 2013, $43,996.00 on April 15, 2013, $50,000.00 on May 3, 2013, $60,000.00 on December 20, 2013, and an unidentified amount on November 22, 2013), 12 (referencing $30,000.00 on April 25, 2020), 78 (referencing an aggregate of $1,140,975.00). Plaintiffs also allege mail fraud on the ground that Dr. Halio received IRS Form K-1s that were factually inaccurate. <u>Id.</u> ¶¶ 73 and 79.

Of import, Plaintiffs filed a special proceeding against Dr. Halio's mother to require her to produce books and records, which Plaintiffs received. <u>Id.</u> ¶¶ 29-31.

Critically, Buck admits in his pleadings that he has known Dr. Halio received funds from the Holdback since in or about 2016 or 2017; this is when Plaintiffs "discovered" Dr. Halio's involvement according to the pleadings. Id. ¶ 31 ("The … records that were secured through those proceedings [in 2016] reveal that [Dr. Halio's mother] fraudulently transferred most of the Holdback from Jobar to … her family members, *including [Dr. Halio]*"). Equally vital, Plaintiffs' claims against Dr. Halio's mother have all been dismissed, except for a claim under the faithless servant doctrine, which is pending an appeal. See Jobar Holding Corp. v. Halio, Index No.: 655689/2017 (New York County Supreme Court), NYSCEF Docket Entry 185.

## ARGUMENT

## I. THE STATUTE OF LIMITATIONS BARS RELIEF TO THE PLAINTIFFS

"The statute of limitations for a civil RICO claim is four years." See Cohen v. S.A.C. Trading Corp., 711 F.3d 353, 361 (2d Cir. 2013). Critically, the statute of limitations "runs from when the plaintiff *discovered*, *or should have discovered*, his injury; it does not matter whether the plaintiff has uncovered the pattern of predicate acts necessary to make out a civil RICO claim." See Alix v. McKinsey & Co., Inc., No. 18-CV-4141 (JMF), 2023 WL 5344892, at *5 (S.D.N.Y. Aug. 18, 2023) (citing, e.g., Rotella v. Wood, 528 U.S. 549, 555-56 (2000)) (emphasis added); accord Koch v. Christie's Int'l PLC, 699 F.3d 141, 150-51 (2d Cir. 2012).

Indeed, "discovery of the injury, not discovery of the other elements of a claim, is what starts the clock." See Rotella, 528 U.S. at 555; see also Koch, 785 F. Supp. 2d at 114 (the statute of limitations "runs even where the full extent of the RICO scheme is not discovered until a later date, so long as there were 'storm warnings' that should have prompted an inquiry") (quoting World Wrestling Entertainment, Inc. v. Jakks Pacific, Inc., 328 Fed. Appx. 695, 697 (2d Cir. 2009) (summary order), aff'd, 699 F.3d 141 (2d Cir. 2012)).

An injury is discoverable, triggering the running of the statute of limitations, when a plaintiff has actual or inquiry notice of the injury. See Koch, 699 F.3d at 150–51.

Inquiry notice is an objective standard, and "dismissal is appropriate when the facts from which knowledge may be imputed are clear from the pleadings." See Wrestling Entertainment, Inc. v. Jakks Pacific, Inc., 530 F. Supp. 2d 486, 525 (S.D.N.Y. 2007) (quotations omitted), aff'd, 328 Fed. Appx. 695 (2d Cir. 2009).

"[I]nquiry notice is tied to actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury ... or precise cause." See Ayers v. Piaker & Lyons, P.C., 748 Fed. Appx. 368, 370 (2d Cir. 2018) (summary order) (internal quotation marks omitted); accord 2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assurance Co., 717 Fed. Appx. 35, 38 (2d Cir. 2017) (summary order).

Furthermore, the continuing violations doctrine does not apply to claims under RICO; instead, "RICO actions are subject to a rule of separate accrual [per injury]." See Bankers Tr. Co. v. Rhoades, 859 F.2d 1096, 1105 (2d Cir. 1988).

In this case, Buck had inquiry notice as to Dr. Halio's so-called involvement in the alleged scheme at issue here since in or about 2017 following the records he received from the 2016 special proceeding. Indeed, the Hon. Jack L. Libert, J.S.C. issued an Order on October 17, 2016 directing Dr. Halio's mother to submit all documents requested in Buck's "Demand for Inspection of Books and Records" on or before November 9, 2016. See In re Buck v. Jobar Holding Corp., Index No.: 605680/2016 (Nassau County Supreme Court), NYSCEF Docket Entry 14. There is nothing to indicate that Dr. Halio's mother failed to comply with the Order based on the docket.

9

Tellingly, Buck's notice of Dr. Halio's alleged involvement is admitted in the complaint in this case.  See ECF Docket Entry 1-1 ¶¶ 29-31 (referring to Buck's ability to secure records from the 2016 special proceeding, which revealed Dr. Halio received funds).  Because Plaintiffs had inquiry notice since in or about November 2016, their RICO claims expired in November 2020.  As such, the RICO claims must be dismissed on statute of limitations grounds.

## II. *COLORADO RIVER* ABSTENTION REQUIRES DISMISSAL OF THE COMPLAINT

The complaint must also be dismissed due to the parallel state court action against Dr. Halio's mother, in which virtually every claim against her (almost the identical claims brought here) were dismissed.  Under Colorado River, *infra*, "a federal court may abstain from exercising jurisdiction when parallel state-court litigation could result in 'comprehensive disposition of litigation' and abstention would conserve judicial resources."  See Niagara, 673 F.3d at 100 (quoting Colorado River, 424 U.S. at 817.  In evaluating whether Colorado River abstention is appropriate, federal district courts are to consider six (6) factors, "with the balance heavily weighted in favor of the exercise of jurisdiction." See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 16 (1983). These six (6) factors are:

> (1) whether the controversy involves a *res* over which one of the courts has assumed jurisdiction, (2) whether the federal forum is less inconvenient than the other for the parties, (3) whether staying or dismissing the federal action will avoid piecemeal litigation, (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other, (5) whether federal law provides the rule of decision, and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

See Woodford v. Cmty. Action Agency of Greene County, Inc., 239 F.3d 517, 522 (2d Cir. 2001) (internal citations omitted). No one factor is necessarily determinative. See Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc., 466 F.3d 88, 94 (2d Cir. 2006) (quoting Colorado River, 424 U.S. at 818-19).

As Plaintiffs point out in their pleadings, there is a parallel action against Dr. Halio's mother pending in New York County Supreme Court, where the Plaintiffs brought substantially the same claims they bring against Dr. Halio here.  See Jobar Holding Corp. v. Halio, *supra*, at NYSCEF Docket Entry 152 (asserting causes of action for unjust enrichment, breach of fiduciary duty, civil RICO, RICO conspiracy, fraud, conversion, aiding and abetting fraud, constructive trust, and violation of the faithless servant doctrine).

As is evident by a review of the complaint in this case, virtually every cause of action brought against Dr. Halio's mother in the state court action has been brought against Dr. Halio here in this case, namely: unjust enrichment, aiding and abetting breach of fiduciary duty, civil RICO, RICO conspiracy, and fraud).  Based on the foregoing, virtually each of the Colorado River abstention factors weigh in favor of abstention.

*First*, the state court has jurisdiction over the *res* — the Holdback funds at issue in this case.  Indeed, as meekly referenced in the complaint, there are funds held in escrow account in relation to the state court action.  See ECF Docket Entry 1-1 ¶ 44.

*Second*, staying or dismissing this case would avoid piecemeal litigation as the same claims arising out of the same transactions are being litigated in the state court action brought against Dr. Halio's mother, a shareholder just like Dr. Halio.[4]  Based on the foregoing, the instant litigation currently exists in two legal *fora*, and this Court will be deciding essentially the same issue.

*Third*, the issue of whether state or federal law provides the rule of decision, similarly weighs in favor of abstention.  As discussed below, this is a run-of-the-mill fraud complaint improperly dressed as a RICO case. The resources of this federal court should not be wasted on this routine state court matter.

---

[4] Crucially, the parties need not to be identical.  See Niagara and Shields, *supra*, at 4.

*Fourth*, the claims brought here have already been dismissed by the state court.

*Fifth*, this case is in its initial stage with a pre-answer motion to dismiss filed by Dr. Halio.

As such, the Court's abstention here would conserve judicial resources and either dismiss this case or, at a minimum, stay all proceedings pending the resolution of the state court action.

Courts have routinely ruled in this fashion in similar circumstances. See York Hunter Const., Inc. v Avalon Properties, Inc., 104 F. Supp. 2d 211, 217 (S.D.N.Y. 2000) (dismissing case without prejudice for all parties to assert their claims in state court); see also Superior Site Work, Inc. v NASDI, LLC, No. 14-CIV.-1061 (ADS) (SIL), 2017 WL 384325, at *7 (E.D.N.Y. Jan. 23, 2017) (staying federal case pending outcome of two state court cases).

This Court should thus dismiss this case as independent reasons exist for dismissal as further set forth herein.

### III. THE RICO CLAIMS ARE IRRETRIEVABLY DEFECTIVE

To state a claim for a violation of RICO pursuant to 18 U.S.C. § 1962(c), Plaintiffs "must demonstrate, that while employed by or associated with an enterprise engaged in interstate or foreign commerce, and through the commission of at least two predicate acts constituting a pattern of racketeering, the defendant directly or indirectly conducted or participated in the conduct of the affairs of such enterprise." See Gross v. Waywell, 628 F. Supp. 2d 475, 485 (S.D.N.Y. 2009); see also Spool v. World Child Int'l Adoption Ag., 520 F.3d 178, 183 (2d Cir. 2008).

"[A] plaintiff must [also] show that he was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" See Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999) (quoting Azrielli v. Cohen Law Offices, 21 F.3d 512, 520 (2d Cir. 1994)).

Furthermore, a RICO plaintiff must allege that the defendant "conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." See 18 U.S.C. § 1962(c); see also Reves v. Ernst & Young, 507 U.S. 170, 177-79 (1993) ("Reves").

In Reves, the Supreme Court explained that the defendant must have had "some part in directing [the enterprise's] affairs." See Reves, 507 U.S. at 179 ("[O]ne is not liable ... unless one has participated in the operation or management of the enterprise itself.").

"A defendant does not 'direct' an enterprise's affairs under § 1962(c) merely by engaging in wrongful conduct that assists the enterprise." See Redtail Leasing, Inc. v. Bellezza,1997 U.S. Dist. LEXIS 14821, at *14 (S.D.N.Y. Sep. 30, 1997). Rather, he must "exert ... control" over the enterprise. See City of N. Y v. Smokes-Spirifs.com, Inc., 541 F.3d 425, 449 (2d Cir. 2008); see also De Sole v. Knoedler Gallery, LLC, 2013 U.S. Dist. LEXIS 142111, at *50-51 (S.D.N.Y. Sep. 30, 2013) ("one is liable under RICO only if he 'participated in the operation or management of the enterprise itself.'") (quoting Azrielli v. Cohen Law Offices, 21 F.3d 512,521 (2d Cir. 1994).

The allegations in the complaint do not remotely evince the notion that Dr. Halio exercised any control over Jobar. Instead, the pleadings state that Dr. Halio's mother: (i) was the chief executive and operating officer; (ii) issued the funds at issue to Dr. Halio and others; and (iii) caused the tax forms to be submitted. There are no factual allegations whatsoever that give rise to an inference that Dr. Halio exercised any control over Jobar.

Thus, the RICO claims must be dismissed for failure to plead direction and control of the alleged RICO enterprise.

The RICO claims must also be dismissed because they do not adequately plead a "pattern of racketeering" activity.

In order to so plead, a plaintiff must plausibly allege multiple acts of racketeering activity occurring within ten (10) years of each other (see 18 U.S.C. § 1961(5); see also Elsevier, Inc. v. Grossman, 2013 WL 6331839, at *9 (S.D.N.Y. Dec. 5, 2013)), and the predicate acts must be "*related*" and "*continuous*." See H.J. Inc., et al. v. Northwestern Bell Tel. Co., 492 U.S. 229, 238-44 (1989) (emphasis added).

An examination of the wordy complaint here evinces only seven (7) transactions, with six (6) in 2013, another in 2020, an unidentified number of transactions in 2017, and the aggregate amount of the transactions with no time span. See ECF Docket Entry 1-1 ¶¶ 3, 12, and 78. These transactions – years apart – are not related nor continuous in a manner to constitute a pattern of racketeering activity.

Accordingly, the RICO claims must be dismissed on this ground, as well.

**A. Plaintiffs Fail to Properly Plead an Association-In-Fact "Enterprise"**

To adequately state a civil RICO claim, a plaintiff must plead sufficient facts to establish that the defendants formed an "enterprise" on whose behalf they acted.

The enterprise is the essence of a RICO claim in that the defendants must have been acting on behalf of the enterprise and not merely for their own benefit.

Critically, there is only one (1) defendant in this case, which belies the essence of a RICO claim and evinces the bad faith nature of the instant complaint.

Plaintiffs seek to establish the "enterprise" component by pleading an "association-in-fact enterprise" between Dr. Halio and his mother. An association-in-fact enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." See Boyle v. United States, 556 U.S. 938, 945 (2009) (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)).

At a minimum, "an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." See Boyle, 556 U.S. at 956 (internal quotations omitted).

The Second Circuit looks to the "'hierarchy, organization, and activities' of the association to determine 'whether its members functioned as a unit.'" See Foster v. 2001 Real Estate, 2015 WL 7587360, *4 (S.D.N.Y. Nov. 24, 2015) (quoting Conte v. Newsday, Inc., 703 F. Supp. 2d 126, 133-34 (E.D.N.Y. 2010)). "Although the Supreme Court's holding in Boyle establishes that a RICO enterprise need not have a formal hierarchy, a Plaintiff must still allege some structural features; otherwise, "any two thieves in cahoots would constitute an association–in–fact." See Foster, 2015 WL 7587360, *4 (quoting Greenberg v. Blake, 2010 WL 2400064, *7 (E.D.N.Y. June 10, 2010)).

Said otherwise, the complaint must "addresses the relationships among defendants in a manner that distinguishes between the "enterprise" and the 'person' who conducted the affairs of the enterprise through a pattern of racketeering." See Singh v. Parnes, 199 F. Supp. 2d 152, 162 (S.D.N.Y. 2002).

The Complaint here is bereft of allegations sufficient to establish "association-in-fact enterprise." Plaintiffs have merely alleged that a mother and son, both shareholders of Jobar, received funds from the Holdback fund of Jobar to the exclusion of Buck and the Estate.

The Complaint does not allege that Dr. Halio had any other association with Jobar other than as a shareholder.  There are no allegations of hierarchy; no allegations that the individual defendants and corporate defendants are an "ongoing organization, formal or informal." There are no allegations that Defendants "function as a continuing unit" with the other defendants.

15

Plaintiffs at best provide nothing more than conclusory allegations in a futile effort to avoid immediate dismissal under Rule 12(b)(6). Such conclusory allegations of association-in-fact enterprise are insufficient to avoid dismissal. See Abbott Labs v. Adelphia Supply USA, 2017 U.S. Dist. LEXIS 1007 (E.D.N.Y. 2017) (finding that plaintiff did not allege facts sufficient to allege an association-in-fact because plaintiff provided nonspecific factual allegations); see also Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC, 2012 U.S. Dist. LEXIS 51841 (S.D.N.Y. 2012).

Moreover, Plaintiffs do not allege that the Defendants' alleged unlawful collaboration existed for any other purpose other than just to misappropriate funds; in fact, the complaint pleads that Jobar's business was being wound down such that it could not exist for any other purpose to permit a finding of an association-in-fact enterprise. This is not an organized crime case where the criminal enterprise exists (as an association or otherwise) and operates in addition to the main businesses providing a service.

Furthermore, Plaintiffs nowhere mention how or whether each of the defendants communicated with each other, nor how each of the sub-associations stands apart from their purported racketeering activities. Accordingly, Plaintiffs have failed to allege that Dr. Halio and others "associated together for a common purpose of engaging in a course of conduct" and, therefore, have not satisfied the "enterprise" element of a RICO claim. See Frederick v Wells Fargo Home Mtge., 2015 US Dist. LEXIS 41328, *29 (E.D.N.Y. 2015).

Finally, the existence of an enterprise alone is insufficient to successfully plead a RICO claim. A plaintiff must also plead that each defendant "conducted or participated, directly or indirectly, in the conduct of" the enterprise's affairs. See 18 U.S.C. § 1962(c). The Plaintiffs here cannot do so because there is only one Defendant, Dr. Halio. Therefore, Plaintiffs unquestionably fail to plead the existence of an association-in-fact enterprise.

16

The Supreme Court has explained that for a RICO claim to be properly pled, the defendants must have participated "in the operation or management of the enterprise." See Reves, 507 U.S. at 185 (internal quotations omitted).

In the Second Circuit, a plaintiff must plead that *each* defendant played "some part in directing the enterprise's affairs." See Conte, 703 F. Supp. 2d at 135 (emphasis added) (internal quotations omitted).

"As interpreted by courts in this district and others, the 'operation and management' test set forth in Reves ... is a very difficult test to satisfy." See Amsterdam Tobacco Inc. v. Philip Morris  Inc., 107 F. Supp. 2d 210, 216 (S.D.N.Y. 2000) (citing LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co., 951 F. Supp. 1071, 1090 (S.D.N.Y. 1996).

"Liability depends on showing that the defendants conducted or participated in the conduct of the enterprise's affairs, not just their own affairs." See Reves, 507 U.S. at 185.

Here, Plaintiffs provided nothing more than unnecessarily wordy and conclusory utterances in a futile effort to sufficiently plead that Dr. Halio conducted or participated in the affairs of the alleged enterprise.

Plaintiffs just plead facts about what Dr. Halio's mother did with respect to Jobar, and it is evident that – accepting the complaint allegations as true – Dr. Halio was a passive participant who merely received money and IRS Form K-1s.

Nothing in the Complaint explains how this alleged enterprise is anything other than the arbitrary, artificially created, reverse-engineered allegations specifically drafted in an attempt to satisfy 18 U.S.C. § 1962(a)'s requirement. Such tittup in light of the existence of funds held in escrow for Plaintiffs and the apparent family vendetta must be seen for what it is.

Consequently, the RICO claims must be dismissed.

17

**B.      The Complaint Does not Allege the Continuity Required to Establish a "Pattern."**

Predicate acts are 'related' for RICO purposes, when they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" See Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 97 (2d Cir. 1997). Relatedness is indicated by "temporal proximity of the [underlying] acts, by common goal, methodology, and their repetition." See Cosmos Forms Ltd. v. Guardian Life Ins. Co., 113 F.3d 308, 310 (2d Cir. 1997).

Continuity, on the other hand, requires something more. And, in fact, the continuity element is where many would-be claims fall short of RICO's strict requirements and find dismissal. See, e.g., Abramo v. Teal, Becker & Chiarmonte, 713 F.Supp.2d 96, 110 (N.D.N.Y. 2010); Spoto v. Herkimer County Trust, 2000 WL 533293, at *5 (N.D.N.Y, Apr. 27, 2000); Grace International v. Festa, 2019 WL 1369000, at *5 (E.D.N.Y., Mar. 26, 2019). "Continuity" may be established through either "a closed period of repeated conduct, or [ ] past conduct that by its nature projects  into the future with a threat of repetition." See H.J. Inc., et al. v.  Northwestern Bell Tel. Co., 492 U.S. 229, 241 (1989) (citation omitted); see also First Capital  Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 180 (2d Cir. 2004) (RICO plaintiffs "must  allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled  with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time) (quoting GICC Capital  Corp. v. Tech. Fin. Group, Inc., 67 F.3d 463, 466 (2d Cir. 1995))).  "Closed-ended continuity" means that the underlying racketeering acts happened over a long time—it is rather strictly about duration. See First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 181 (2d Cir.2004) ("A closed-ended pattern of racketeering activity involves predicate acts extending over a substantial period of time.").

"[P]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy the continuity requirement." See Wee v. Rome Hosp., 1996 WL 191970, at *5 (N.D.N.Y., Apr. 15, 1996).  In fact, "The Second Circuit "has never found a closed-ended pattern where the predicate acts spanned fewer than two years." See Abramo, 713 F. Supp. 2d at 110 (emphasis added) (citing First Capital Asset Mgmt., 385 F.3d at 181); see also DeFalco v. Bernas, 244 F.3d 286, 321 (2d Cir. 2001) (collecting cases). This duration "is measured by the RICO predicate acts the defendants commit"—that is, the span of time in which the actual acts of mail fraud, wire fraud, or other RICO crimes occurred. See Abramo, 713 F.Supp.2d at 110-11.

In accordance with Second Circuit precedent, the courts in this Circuit repeatedly dismiss closed-ended pattern cases when the defendant fails to allege racketeering acts spanning at least two (2) years. See Id. at 110; see also Wee, 1996 WL 191970, at *5; FD Prop. Holding, Inc. v. U.S. Traffic Corp., 206 F. Supp. 2d 362, 372 (E.D.N.Y. 2002); Flexborrow LLC v. TD Auto Fin. LLC, 255 F. Supp. 3d 406, 420 (E.D.N.Y. 2017); Ray Larsen Assocs., Inc. v. Nikko Am., Inc., No. 89 CIV. 2809, 1996 WL 442799, at *8 (S.D.N.Y. Aug. 6, 1996).

Here, while the Plaintiffs have incontrovertibly alleged that the purported scheme was carried out over a period of approximately nine (9) years, there are large spans of time in which no predicate acts are plead.  Indeed, the allegations merely consist of discrete transactions in 2013, 2017, and 2020, with none in the interim years between 2013 and 2016 or 2018 through 2019. Because Plaintiffs have failed to allege, as required, continuous predicate acts constituting a pattern of racketeering activity, the RICO claims must be dismissed.  See Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 97 (2d Cir. 1997) (to establish a "pattern" of racketeering activity, a plaintiff must plead "at least two predicate acts, [and] show that the predicate acts are related, and that they amount to, or pose a threat of, *continuing* criminal activity") (emphasis added).

The Complaint's indisputable failure to allege continuous activity is not the only reason the "pattern" element is absent thereby requiring dismissal. "To establish a pattern, a plaintiff must identify at least two predicate acts and show that (1) the acts are related both to each other (horizontal relatedness) and to the enterprise (vertical relatedness) and (2) the conduct continued over a substantial period of time." See Halvorssen v. Simpson, 2020 U.S. App. LEXIS 8512, *6 (2d. Cir. 2020). Plaintiff has failed to show the continuity required given the lack of any allegations in the intervening years between 2013 and 2020 (other than in 2017), thus mandating dismissal. Id. at *6 ("The requirement that the plaintiff establish a pattern of racketeering activity is intended to prevent the application of RICO to 'isolated or sporadic' criminal acts").

Nevertheless, Plaintiff has also failed to plead horizontal relatedness. "Horizontal relatedness requires that the predicate acts 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. (citing Reich v. Lopez, 858 F.3d 55, 61 (2nd Cir. 2017) (quoting H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 240 (1989)). "Where the enterprise at issue is primarily a legitimate business, horizontal relatedness cannot be stablished 'simply by linking each act to the enterprise,' but rather there must be a relationship 'between the predicate crimes themselves.'" Id. (citing Reich, 858 F.3d at 61)). Where "[t]he only horizontal link between the predicate crimes is the overlap of participants" and "where the enterprise in question is not primarily in the business of racketeering, that is insufficient." See Reich, 858 F.3d at 62.

Here, there are no allegations that Dr. Halio and his mother acted for any other purpose than legitimate transactions related to their status as shareholders of Jobar – no history of any other alleged criminal conduct or simultaneous to the alleged conspiracy is pled. Plaintiffs have alleged nothing more than self-interested conduct in corporate affairs that does not rise to a RICO claim.

Such pleadings are insufficient for adequately pleading "horizontal relatedness" and the RICO claims must be dismissed.

As to vertical relatedness, the plaintiff must plausibly allege 'that the defendant was enabled to commit the offense solely because of his position in the enterprise or his involvement in or control over the enterprise's affairs, or because the offense related to the activities of the enterprise.'" Id. (citing United States v. Burden, 600 F.3d 204, 216 (2nd Cir. 2010)).

Plaintiffs make no allegations concerning vertical relatedness.

Accordingly, the RICO claims must be dismissed for this reason, as well.

**C.    The Complaint Does Not Allege an "Open-Ended" Pattern of Racketeering Activity**

"To satisfy open-ended continuity, the plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." See Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999). In other words, courts do not require a plaintiff to establish that the criminal conduct occurred for a long time in the past (two years or more) if the defendant threatened certain RICO criminal conduct in the future, as of the time that the plaintiff sued.

The Second Circuit has clarified that this theory only applies to "inherently unlawful" criminal activities in pursuit of "inherently unlawful" goals, such as murder, obstruction of justice, narcotics trafficking, embezzlement, extortion, bribery, and money laundering. See United States v. Aulicino, 44 F.3d 1102, 1111 (2d Cir. 1995); Albunio v. Int'l Safety Grp., WL 1267795, at *7 (S.D.N.Y. Mar. 30, 2016) (emphasis added); see also Spoto v. Herkimer County Trust, 2000 WL 533293, at *5 (N.D.N.Y, Apr. 27, 2000).

"Ordinary fraud supported by wire fraud predicates are not 'inherently unlawful' for purposes of RICO continuity." <u>See</u> <u>Grace Int'l Assemby of God v. Festa</u>, 2019 WL 1369000, at *8 (S.D.N.Y. Mar. 26, 2019) (<u>citing</u> <u>Aulicino</u>, 44 F.3d at 1111). That is because using the mails or wires is not *per se* criminal—whether a particular piece of mail or wire communication is deceptive or not depends on factual details surrounding the communication, which lend themselves to resolution within an ordinary civil remedy (such as a common law fraud claim).

In contrast, murder, bribery and drug trafficking, etc., are generally illegal *per se*. Open-ended continuity is reserved for those cases in which the defendant's threat of future conduct rises to that grave level of offense rather than ordinary fraud. <u>See</u> <u>Int'l Bhd. of Teamsters v. Carey</u>, 297 F. Supp. 2d 706, 715 (S.D.N.Y. 2004) ("[F]raud (the object of which is by definition to obtain money or property from others) has been held not to be 'inherently unlawful' in the RICO continuity context." (citation omitted)), <u>aff'd</u> <u>*sub*</u> <u>*nom.*</u> <u>Int'l Bhd. of Teamsters v. Blitz</u>, 124 Fed. Appx. 41 (2d Cir. 2005); <u>see</u> <u>also</u> <u>Econ. Opportunity Comm'n v. Cnty. of Nassau</u>, 47 F. Supp. 2d 353, 366-67 (E.D.N.Y. 1999) (mail fraud, wire fraud and Hobbs Act predicates are not inherently unlawful for purposes of RICO continuity).

In this case, Plaintiff relies entirely on alleged mail and wire fraud predicates. There are no allegations that Defendants engaged in or threatened "inherently unlawful" crimes such as murder, drug trafficking, money laundering, or anything of the sort. Accordingly, the plaintiffs' claims are ineligible for an open-ended continuity theory, and the pleading fails to allege a "pattern" of racketeering activity.

Indeed, courts may dismiss RICO claims "where the purported acts of mail fraud consisted of nothing more than routine business communications." <u>See</u> <u>Am. Med. Ass'n v. United Healthcare Corp.</u>, 588 F. Supp. 2d 432, 443 (S.D.N.Y. 2008).

This is because a routine business communication serving as the basis for mail fraud under RICO must have content sufficient to provide "a reasonable inference of fraudulent intent." See Atl. Gypsum Co., Inc. v. Lloyds Intern. Corp., 753 F. Supp. 505, 514 (S.D.N.Y. 1990); see also O'Malley v. N.Y.C. Transit Auth., 896 F.2d 704, 707 (2d Cir. 1990).

Here, the purported acts of mail fraud consist of mailing IRS Form K-1s, which Dr. Halio received (and thus did not send), and the receipt of such tax forms are nothing more than routine business communications.

Similarly, Dr. Halio is indisputably a shareholder of Jobar and his receipt of funds is likewise nothing more than a routine business transaction. As such, Plaintiffs' RICO claims fail on this ground, as well.

For the foregoing reasons, Plaintiff has failed adequately to allege a pattern of racketeering activity under RICO subsection 1962(c). Accordingly, the complaint must be dismissed.

**D.      Plaintiffs RICO Conspiracy Claims Under 18 U.S.C. § 1962(d) Must be Dismissed**

If a "complaint does not adequately plead a substantive RICO violation, the conspiracy claim under § 1962(d) also fails." See BWP Media USA, Inc. v. Hollywood Fan Sites, LLC, 69 F. Supp. 3d 342, 363 (S.D.N.Y. 2014). Since Plaintiffs fail to properly plead a civil RICO violation, its claim alleging a RICO conspiracy also must fail as a matter of law.

Furthermore, assuming *arguendo* that Plaintiffs had properly pled a RICO violation, their conspiracy claim still fails because it fails to allege specific facts showing that Dr. Halio entered into an agreement to commit any of the predicate acts. See Dulsky v. Worthy, 2013 WL 4038604, *5 (S.D.N.Y. July 30, 2013) ("The core of a RICO conspiracy is an agreement to commit predicate acts, and a RICO civil conspiracy complaint must specifically allege such an agreement") (internal quotations omitted).  Indeed, Dr. Halio's testimony was that he never asked for funds.

"[A] RICO conspiracy allegation should be more than a conclusory add-on at the end of a complaint. It should state with specificity what the agreement was, who entered into the agreement, when the agreement commenced, and what actions were taken in furtherance of it." See FD Prop. Holding, Inc. v. U.S. Traffic Corp., 206 F. Supp. 2d 362, 373 (E.D.N.Y. 2002).

Plaintiffs do not allege any facts demonstrating that Dr. Halio actually entered into any specific conspiracy agreement to do anything in particular with anyone else. Plaintiffs allege no details about when the purported agreement amongst the various individuals, all of whom are shareholders, was entered into, nor about how they intended to go about carrying out the alleged scheme, for example.

Moreover, there are no allegations in the Complaint demonstrating that Dr. Halio was aware of the scope of the purported enterprise. See, Goldfine v. Sichenzia, 118 F. Supp. 2d 392, 407 (S.D.N.Y. 2000) (holding that the plaintiff failed to properly plead a violation under section 1962(d) where the complaint was "devoid of any factual allegation whatsoever to indicate that any of the moving defendants were aware of the alleged scope of the purported enterprise.")

This failure is fatal to Plaintiff's RICO conspiracy claim, and it should therefore be dismissed.

### IV. This Court Should Decline to Exercise Supplemental Jurisdiction

This Court should decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. The Court has discretion to hear such claims pursuant to 28 U.S.C. § 1367(a), which states:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

See 28 U.S.C. § 1367(a).

24

Under 28 U.S.C. § 1367(c)(3), however, the exercise of supplemental jurisdiction over a party's remaining state law claims is within the Court's discretion if it has "dismissed all claims over which it has original jurisdiction." See TPTCC NY, Inc. v. Radiation Therapy Servs., 453 Fed. Appx. 105, 106 (2d Cir. 2011).

The Second Circuit has repeatedly counseled against exercising supplemental jurisdiction in this circumstance: "'[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.'" See First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 183 (2d Cir. 2004) (quoting Castellano v. Bd. of Trustees, 937 F.2d 752, 758 (2d Cir. 1991)).

Accordingly, because this Court should dismiss all of Plaintiff's claims that are based on a federal question under 28 U.S.C. § 1331, and because there is no other basis for jurisdiction over this case, the Court should decline to exercise its supplemental jurisdiction over Plaintiff's state law claims.

Dated:  Jamaica, New York
        February 29, 2024                          Respectfully submitted,

                                                   **SAGE LEGAL LLC**

                                                   */s/ Emanuel Kataev, Esq.*
                                                   Emanuel Kataev, Esq.
                                                   18211 Jamaica Avenue
                                                   Jamaica, NY 11423-2327
                                                   (718) 412-2421 (office)
                                                   (917) 807-7819 (cellular)
                                                   (718) 489-4155 (facsimile)
                                                   emanuel@sagelegal.nyc

**VIA ECF**
Scarinci & Hollenbeck, LLC
Attn: Dan Brecher, Esq.
589 Eighth Avenue, 16th Floor
New York, NY 10018-3005

*Attorneys for Plaintiffs*

25