UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
JOBAR HOLDING CORPORATION, ROBERT BUCK, Individually, and ROBERT BUCK, as Executor of the Estate of JOAN BUCK, and ROBERT BUCK, individually and ROBERT BUCK, as Executor of the Estate of JOAN BUCK, derivatively as shareholders on behalf of JOBAR HOLDING CORPORATION,

                                    Plaintiffs,

                                    Case No. 1:23-cv-11217 (JGLC)(GS)

       -against-

                                    <u>DECLARATION OF DAN BRECHER, ESQ. IN OPPOSITION TO MOTION . FOR RULE 11 SANCTIONS</u>

DAVID HALIO,

                                    Defendant.
-------------------------------------------------------------------------X

    DAN BRECHER, ESQ., an attorney duly admitted to practice law in the courts of the State of New York, and before this Court, declares the following to be true under the penalties of perjury:

    1. I am Counsel to the law firm of Scarinci & Hollenbeck LLC, counsel for the Plaintiffs Robert Buck, individually, and Robert Buck, as Executor of the Estate of Joan Buck (hereinafter collectively, the ("Buck Plaintiffs"), and the Buck Plaintiffs derivatively as shareholders on behalf of Jobar Holding Corporation ("Jobar").

    2. I make this declaration in opposition to the Defendant's motion pursuant to Rule 11 of the Federal Rules of Civil Procedure (hereinafter referred to as "Rules" or "Rule"), 28 U.S.C. § 1927, and this Court's inherent power for sanctions against plaintiffs and their counsel.

    3. In Defendant's motion, Defendant acknowledges that "only conduct explicitly referred to in the instrument providing notice is sanctionable." There is no conduct explicitly referenced in the instrument providing notice, Defendant's April 12, 2024 letter, other than the following: "...the pleadings and your memorandum of law in opposition to Dr. Halio's motion to dismiss

1

violate Rule 11 of the Federal Rules of Civil procedure because there is no basis to state a claim under the Racketeer Influenced and Corrupt Organization Act ("RICO").

4. Since there is no explicit issue raised in the motion for sanctions as to any untrue statement of fact, and no other specific violative conduct is explicitly stated, I assume that the only issue raised in the Defendant's sanction motion is whether or not the Complaint, and the Plaintiffs' memorandum of law submitted in opposition to Defendant's motion to dismiss, supported claims that had no chance of success and there is no reasonable argument to extend, modify or reverse the law as it stands.

5. Accordingly, I respectfully submit that the detailed facts pleaded sufficiently support the state claims against Defendant included in the Complaint, of unjust enrichment, aiding and abetting the breach of fiduciary duty by Barbara Halio ("Barbara") with alleged fraudulent transactions specifically set forth in the instant state Complaint, filed and served in New York Supreme Court in November 2023. The extant 2020 injunction and restraining order issued against Barbara in the state action showed there was sufficient proofs to provide Plaintiffs good reason and comfort in the bona fides of the Plaintiffs' state law causes of action. They were originally dismissed by Justice Cohen in 2020 but have now been restored against Barbara and are not contested in the instant motion to dismiss. Here, the state law claims alleged against the Defendant in the Complaint are unjust enrichment, aiding and abetting breach of fiduciary duty, fraud and aiding and abetting fraud. The dismissed state law claims against Barbara were recently restored by Justice Cohen, after I had obtained a court order requiring Defendant to attend and be deposed. I deposed Defendant and included 2023 deposition admissions by him in my motion papers to restore state claims that Justice Cohen restored. With the benefit of Barbara's sworn admissions in her 2017 affidavit (**Exhibit A** at paras. 9 and 10), Defendant's deposition admissions of unrepaid "loans" from the Jobar Holdback Account (**Exhibit B**, selected pages), and Defendant's obfuscations in his deposition testimony, gave me confidence in the merit of not only the state claims, but also of the RICO claims here when I filed them last year in the State court. (Complaint at ¶ 69)

6. At the time I signed the Complaint last year, and subsequently the memorandum in opposition to the Defendant's motion to dismiss, I had every reason to believe the state claims were valid. I also had reason to believe that the RICO claims were adequately pleaded based upon the admissions of wrongdoing that had been elicited over the course of seven years of litigation. Before I signed and filed the instant Complaint, I had in my possession Barbara's 2017 and 2020 affidavits and discovery documents, including Jobar tax returns, evidencing she took $1,140,975 in fake "loans" (**Exhibit C**, 2013 and 2014 at page 4 of each return) out of the Jobar Holdback fiduciary account and Defendant's deposition admissions of receipt of over $200,000 in unrepaid undocumented "loans" and wires out of the Jobar Holdback Account.

7. On examination of the tax returns prepared by T & E and signed by Barbara, as President of the corporation, one can see how they are purposely misleading. For example, the first page of the 2013 Jobar tax return, at Item F, claims the corporation has total assets of $1,303,819. But the assets were mostly the phony loans to Barbara and Defendant. Nonetheless, at page 7 of the 2013 tax return, the "loans" are listed as current assets when Barbara and Bernstein and Defendant all knew that these were not current assets.

8. The first page of the 2014 tax return claims only $3,548 in total assets, but page 4, line 8 lists "Other current assets  Statement 4  $1,140, 975," which are the phony loans to Barbara, certainly not eligible to be listed as "Other Current Assets." (**Exhibit C**). At that time, Bernstein and Barbara knew the entries were false. (Complaint at ¶¶84, 85, 88 and 92). Those are material facts that Defendant and Barbara cannot deny, that are documented and underly the State and RICO causes of action, because the claims are based upon their own sworn statements and the tax documents, including those referred to herein.

9. Therefore, I had a reasonable belief at the time I signed the Complaint and motion papers that the facts necessary to assert RICO claims, together with the allegations and the applicable law were sufficient to defeat a motion to dismiss the causes of action in the Complaint, including the RICO claims.

10. Plaintiffs submit herewith their memorandum of law in opposition to the motion for Rule

11 sanctions, with citations showing that, notwithstanding whether or not the RICO claims are dismissed, sanctions are not called for here given the reasonable investigation, good faith presentation of material facts that the Defendant does not dispute, and that set forth a pattern of criminal behavior evidenced on numerous occasions over a period of years, in concert with others, causing losses to the Plaintiffs. The Complaint and the memorandum of law in opposition to the motion to dismiss do not contain any false statements of fact, and the allegations are not frivolous, as evidenced by the extant injunction and restraining order against Barbara and "all persons acting in concert or participating with her."

11. I signed the Complaint and the memorandum of law in opposition to the motion to dismiss the Complaint relying upon clearly supportable allegations in the Complaint of seven years of embezzlement, multiple fraudulent conveyances, including in 2020, three years prior to the filing of the Complaint in State court, with mail fraud, wire fraud and ongoing tax fraud alleged in detail in the Complaint.

12. The pleading alleges the Defendant's participation in and personal benefit from the open-ended scheme that included Defendant, Barbara and their personal accountants, who were also Jobar's accountants, and alleges the scheme that included dozens of predicate acts of embezzlement, committed through mail and wire fraud, and tax fraud, in a pattern of connected activities and transactions utilizing fake "loans" disguised for years by falsified tax returns and K-1's sent to Plaintiffs and other Jobar shareholders that the accountant told Buck were a "mistake." The Buck Plaintiff's reliance on the false returns and "mistake" laden K-1's contributed to the direct losses the Plaintiffs suffered as they facilitated the embezzlement resulting in the disappearance into the accounts of Defendant and his mother, Barbara, of the entirety of the $1,500,000 Jobar Holdback Fund and also the loss of earned interest thereon. The Defendant and Barbara both knew, at all times, that the Buck Plaintiffs were entitled to 38% of The Jobar Holdback Account and interest earned thereon. Nothing is left in the Jobar Holdback Account, Barbara and Defendant having embezzled virtually all of the Holdback Fund. Having transferred much of her assets to her children,

Barbara now claims poverty and inability to do what she swore to the Court she would do: "repay plaintiff Robert 38% of the loans I took from Jobar." Their accountants are alleged to have admitted contemporary knowledge of the problem of the "loans' taken by Barbara and Defendant from the Holdback Fund account and the "mistaken" K-I's. (**Exhibit D**)

13. The parties in the state court case recently filed opening briefs in their respective appeals to the Appellate Division First Department of the motion court's denial of Barbara's motion to dismiss Jobar's faithless servant claim and of the motion court's 2020 dismissal of the Plaintiffs' Civil RICO and Civil RICO conspiracy causes of action, among other issues. Those claims remain at issue in the Plaintiffs' appeal pending before the Appellate Division in the State court case.

14. As alleged, Jobar has remained in existence as a corporation for years only because Barbara and the Defendant are alleged to have continued to fail to file truthful amended tax returns, with substantial taxes being owed on at least the $1,140,975 Barbara admits to having taken as undocumented "loans" and the $168,996 of wires and checks in fraudulent conveyances that we know of that Barbara sent and Defendant admits he deposited the funds of the Jobar Holdback Account falsely described as "loan" on the checks, and the wires sent to Defendant without explanation or documentation, including the $43,966 wire to pay Defendant's professional medical malpractice premium. Defendant also deposited a $30,000 check Barbara paid him in 2020 in a fraudulent conveyance of funds that had emanated out of proceeds of the Jobar Holdback Account that Barbara admitted were used to pay the mortgage on the Water Mill property. Barbara had sworn to the Court, in opposing a 2017 attachment motion, that moneys that were owed to "Plaintiff Robert" Buck would be paid to him when her Watermill property was sold (**Exhibit A**), which occurred secretly in 2020 during the pandemic.

15. Instead of paying plaintiff Robert, as she had sworn to the court in 2017 she would do, after the 2020 closing, upon receiving the proceeds of the sale of the property, Barbara sent more than $150,000 to her children, grandchildren and son-in-law in California, and sent a check for $30,000 to Defendant instead of paying "plaintiff Robert" as she had sworn to the

Court in 2017 she would do. When I filed the Complaint, it was clear that the continuity in the numerous "loans," including at least six transactions of funds sent to Defendant by Barbara out of the Jobar Holdback Account, and the more than a million dollars of undocumented "loans" Barbara admitted she took from the Jobar Holdback Account in dozens of transactions over a seven year period, together with other pleaded fraudulent transactions, was a sufficient pattern of continuity between the Defendant, Barbara and their accountants to satisfy the RICO pattern, continuity and Enterprise requirements, as explained in Plaintiffs' memorandum of law submitted herewith in opposition to the Defendant's motion for Rule 11 sanctions.

16. Barbara admitted that the Buck Plaintiffs were entitled to 38% of the Jobar Holdback Account, which they never received. In 2020, Barbara sent proceeds of the property sale to David, and to her family members in California, instead of to the Buck Plaintiffs, as she had promised the Court in 2017 she would do. This was sufficient evidence to satisfy the RICO pleading requirement that the Plaintiffs had suffered direct losses as a result of a RICO scheme in which the Defendant actively participated and benefited.

17. I also had reason to believe that transactions in aid of tax evasion in a more comprehensive open-ended scheme, utilizing mail fraud and wire fraud, is not the "mere fraud" that state and federal courts have decried.

18. I had good reason to believe the Complaint satisfactorily alleged open-ended continuity based on the dozens of similar acts of "loans" and fraudulent conveyances continuing over a period of years, including in 2020.

19. When I signed the Complaint and opposition memorandum of law, I had the reasonable belief that whether the Court considered it closed or open-ended, the Court would find for the required continuity to satisfy that RICO requirement. Defendant continued to engage with Barbara in their fraudulent conveyance tax evasion scheme as alleged, including the 2020 payment he received from Barbara, and the newly learned fact of his maintaining of his medical offices in Barbara's house rent free. I believed those acts to be in violation of the extant injunction and restraining order against Barbara and "all persons acting in concert or

participating with her." The Complaint alleges Defendant's continuing free rent arrangement for his medical offices in Barbara's home, to this day. Defendant was unable to disprove this allegation at his deposition. The Defendant is alleged to have engaged in an organized scheme to commit fraud through a pattern of substantially similar conduct over a period of years, acting in association with, and in support of, Barbara and their accountants misdeeds and fraud.

20. When I signed the Complaint and the memorandum in opposition to the motion to dismiss the Complaint, I understood the state of the law to be that a RICO Enterprise, as alleged here, could consist of an association of individuals, and that Defendant could be both the defendant and a member of the association-in-fact enterprise that includes the Defendant. That is the Enterprise pleaded in the Complaint.

21. When I signed the Complaint and the memorandum in opposition to the motion to dismiss the Complaint, I understood and was aware of case law that indicated that the RICO requirement of an affect on interstate commerce was satisfied by alleging the Jobar Holdback Account at Chase Bank, the wires and other inter-state payments, including funds Barbara sent to her California family members as alleged in the Complaint, together with the K-1's and tax filings sent interstate. I believed these allegations would be considered in satisfying this further requirement of a RICO cause of action.

22. In light of the lack of explicit reference in Defendant's safe harbor letter to any issue as to conduct of the Plaintiffs or their attorneys, and the lack of reference to material factual allegations in the Complaint being untrue, I have responded here to the assertion that "...the pleadings and your memorandum of law in opposition to Dr. Halio's motion to dismiss violate Rule 11 of the Federal Rules of Civil procedure because there is no basis to state a claim under the Racketeer Influenced and Corrupt Organization Act ('RICO')." I respectfully submit that the Complaint and the Plaintiffs' memorandum of law do provide facts and allegations that are confirmed by the Defendant's own testimony, Barbara's affidavit and these attached Exhibits.

23. The above documents support the plausible alleging in the Complaint of the elements of a RICO claim: a connected series of admitted embezzlements and tax fraud; accomplished through the use of the mails and wires; that directly resulted in Buck Plaintiffs suffering losses; as a result of acts of the Defendant, in a decade-long Enterprise that is an association in fact, headed by Barbara assisted by Defendant, and long-time family and business accountant, Mark Bernstein, T & E's partner on the Halio accounts (**Exhibit D**).

24. It is respectfully submitted that the pleading presents a plausible RICO claim. Based on my understanding that where multiple fraudulent tax returns are alleged to have been filed, mail fraud is a permissible RICO claim. I understood that mail pyramiding was permitted in the instance of a claim of tax fraud where, as here, there were multiple fraudulent tax fraud filings. I recognize that the alternative bank fraud claim was error. State claims alleged. I understood that the additional requirement for at least a slight effect on interstate commerce that has been held satisfied by bank transactions, wires sent, checks and tax returns sent interstate, all of which are present here.

25. I respectfully submit that the above representations, together with the case law cited in the accompanying Plaintiff's Memorandum of law in opposition to the Defendant's motion for Rule 11 sanctions, show that Plaintiffs had a reasonable belief in the merits of their claims asserted in the Complaint, that the Complaint is not frivolous, and that the RICO causes of action are claims that have a chance of success, as I believed when I filed the Complaint. To the extent that there are issues that the Defendant did not raise in this Rule 11 sanctions motion, that the Court may nonetheless consider, I believe the Complaint satisfactorily alleges and fulfills the RICO pleading requirements, and that there are reasonable arguments that exist under these unusual facts of long term embezzlement and tax fraud, together with the unusual admissions that could serve to extend, modify or reverse the law as it stands.

I declare, under penalty of perjury, that the foregoing is true and correct.

Dated: New York, New York

August 12, 2024

                                                             /s/ Dan Brecher

                                                            Dan Brecher, Esq.

Via E-mail and ECF

Sage Legal LLC
Attn: Emanuel Kataev, Esq.
18211 Jamaica Avenue
Jamaica, New York 11423-2327
emanuel@sagelegal.nyc