UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JOBAR HOLDING CORPORATION, ROBERT BUCK, Individually, and ROBERT BUCK, as Executor of the Estate of JOAN BUCK, and ROBERT BUCK, individually and ROBERT BUCK, as Executor of the Estate of JOAN BUCK, derivatively as shareholders on behalf of JOBAR HOLDING CORPORATION,

                                        Plaintiffs,

               Case No. 1:23-cv-11217 (JGLC)(GS)

-against-

               **MEMORANDUM OF LAW IN**

               **OPPOSITION TO MOTION**

               **FOR RULE 11 SANCTIONS**

DAVID HALIO,

                                      Defendant.
-------------------------------------------------------------------X

## PRELIMINARY STATEMENT

    Defendant contends that the instant complaint is frivolous, and moves for sanctions against the Plaintiffs and their counsel. It is not frivolous. Plaintiff submits this memorandum of law in opposition to the Defendant's Motion for Rule 11 sanctions.

    Defendant's safe harbor notice, the April 12, 2024 letter from his attorney, provided only the following safe harbor notice "…the pleadings and your memorandum of law in opposition to Dr. Halio's motion to dismiss violate Rule 11 of the Federal Rules of Civil procedure because there is no basis to state a claim under the Racketeer Influenced and Corrupt Organization Act ("RICO")." Defendant acknowledges in his motion that "only conduct explicitly referred to in the instrument providing notice is sanctionable."

Defendant cannot reasonably complain about any lack of a reasonable inquiry into the facts, which include Defendant's deposition admissions of substantial unrepaid so-called "loans" (Exhibit B to Declaration of Dan Brecher, Esq., dated August 12, 2024 (the "Brecher Declaration") and Barbara Halio's 2017 affidavit admitting she owed "plaintiff Robert" 38% of the Jobar Holdback Account's funds; $1,500,000 was the amount deposited into the Chase bank account, which subsequently earned interest, while the Defendant and his mother, Barbara Halio ("Barbara") embezzled the funds, leaving the account empty and Jobar unable to pay Robert Buck, Individually (:Buck") and Robert Buck, as Executor of the Estate of Joan Buck (hereinafter collectively, the "Buck Plaintiffs") the 38% of the Holdback Account funds Barbara had been entrusted with, as the President of Jobar and the only signatory on the Jobar Holdback Account, and other bank accounts Jobar had at the time.

Against the background of seven years of litigation, an appropriate investigation of the facts by Plaintiffs' counsel included the obtaining of material supporting facts and admissions through hard fought and frustrating discovery in which Defendant was uncooperative, requiring a year's delay, motion practice and a court order to obtain Defendant's deposition. Barbara resisted discovery too, and was given substantial courtesies, based upon her health issues, to the extent that she has not yet been deposed. But in the sworn statements she submitted to the Court, such as in her affidavit dated December 2, 2017, **Exhibit A** to the Brecher declaration, Barbara admitted owing 38% of the Jobar Holdback Funds, she admitted using Jobar Holdback funds to pay for the Water Mill Long Island vacation home, and promised the Court she would pay "plaintiff Robert" out of the proceeds of the sale of her vacation home. Then, in 2020, she secretly sold her vacation home for more than a million dollars, and instead of paying "plaintiff Robert" as she had promised the Court, she sent hundreds of thousands of dollars to her children, including Defendant and her other children,

her son-in-law and grandchildren in California. She then admitted to the Court what she had done, dishonoring her own sworn promise to the Court, and claimed poverty and inability to pay the Buck Plaintiffs the 38% she admitted remained owed to them, and that she could not repay the non-interest, undocumented Jobar "loans."

We provide all of this background information in response to the Defendant's motion and the highly charged accusations describing this lawsuit as a "vendetta." Judge Cohen, on being presented with this changed set of facts and the disrespectful behavior of Barbara, the breaking of her promise to the Court that she would pay the Buck Plaintiffs on the sale of the Water Mill property, a promise she made to defeat an attachment motion, decided that an injunction and restraining order was appropriate, and it was entered on September 24, 2020, as NYSCEF Doc. No. 182 under Index No. 655689/2017 in New York County Supreme Court.

The appeals of Justice Cohen's 2020 decision dismissing all but one of the claims against her, including the Civil RICO and Civil RICO conspiracy claim, are on appeal and on the October calendar of the Appellate Division for argument in October with opening briefs having been filed, and with reply briefs due next month, including on the cross-appeal of Turman & Eimer LLP., who are defending against the Plaintiffs' request to restore them as defendants to state and RICO claims. This year, Justice Cohen restored state claims against Barbara, and she recently filed a motion to dismiss the pending state claims against her in that case.

The Brecher Declaration shows that a reasonable investigation of the facts was made.

Therefore, the remainder of the brief will focus on whether the elements of a RICO claim were plausibly pleaded, with brief discussion as to each element required to be alleged in a Civil RICO claim or Civil RICO conspiracy claim and whether it was plausibly alleged.

## ARGUMENT

### The Elements of a RICO claim were plausibly pleaded.

The Defendant committed two or more of the requisite acts. The Complaint pleads more than six fraudulent "loans" in checks and wires he received out of the fiduciary account and proceeds thereof, over the course of seven years, constituting a "pattern" of "racketeering activity" in which he directly participated in an "Enterprise" that consisted of an association of individuals that included the Defendant, Barbara and T & E's partner, Mark Bernstein, who was the family and business accountant throughout. (**Exhibits C and D**)

The elements that were plausibly alleged in the Complaint show that a good faith effort to investigate and plead the RICO claims was made by Plaintiffs, and that any defect in the pleading is not such that it appeared to Plaintiffs' counsel when he signed the Complaint, that the RICO claims "had no chance of success and that there is no reasonable argument to extend, modify or reverse the law as it stands.

The Brecher Declaration shows that the Complaint alleges admissions sufficient to merit a motion for summary judgment on the state claims. Defendant, nonetheless, basis his sanctions motion on "frivolity" of the Complaint. For purposes of this memorandum, we will assume that the motion seeks sanctions for Plaintiffs' alleged failure to properly research and allege a RICO claim.

At paragraphs 7 and 8 of the Brecher Declaration, we explain the fraud content of the 2013 and 2014 Jobar tax returns prepared by T & E, signed by Barbara and filed at her direction as President of Jobar (**Exhibit C**). These false returns lulled the Plaintiffs into believing that there was nothing to worry about, because they showed substantially more than a million dollars owed to Jobar in non-shareholder loans. But these were undocumented shareholder loans to Barbara and Defendant, for which no interest was being charged, and despite the passage of years, nothing has been repaid. Disguising the loans as non-shareholder loans shows a consciousness of guilt. This tax fraud, through the use of the mails and wire, is underlying the mail fraud and tax fraud claims, and the Government has had an accepted practice of

pyramiding the tax fraud claim when suing tax cheats, using the mail and wire fraud statutes. That is one basis I had for reasoning that the RICO claims for mail fraud (Complaint ¶¶73 (a) had a chance of success.

With regard to the bona fides of the § 1962 (c) (and (d) claims, Plaintiffs alleged (1) the details of the Defendant's mail and wire fraud in support of the embezzlement/tax fraud scheme (Complaint ¶¶ 73, 78, 81 and 84 -85) (tax evasion, 26 USC 7201); (2) the association-in-fact Enterprise, alleged to include Barbara in charge, with Defendant and their accountant, Mark Bernstein as the enabler of the scheme (Complaint at ¶¶ 74, 84, 85 and 88) *see, Cullen v. Margiotta*, 811 F. 2d 698, 730 (2d Cir.), cert. denied, 483 U.S. 1021, [107 S. Ct. 3266, 97L. Ed.2d 764 (1987); (3) committed more than six acts over a period of seven years in transactions with Barbara regarding funds emanating from the Jobar Holdback Account that were promised to the Buck Plaintiffs but never paid (Brecher Declaration, **Exhibits A** and **B**); (4) constituting a years long pattern from 2013 and as recent as a fraudulent conveyance and tax fraud in 2020 (four year statute of limitations for RICO claims, *Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 147, 107 S.Ct. 2759, 2762 (1987), and as early as 2013 (**Exhibit B**) in falsified tax filings to hide an embezzlement scheme; (5) directly causing Plaintiffs the entire loss of the funds Barbara had promised to pay, that Barbara controlled and paid to herself and Defendant, or for his benefit (**Exhibits A** and **B**); that affected interstate commerce (see, *U.S. v. Beasley*, 72 F. 3d 1518 (11th Cir.) *cert denied* 518 U.S. 1027(1996) only slight effect on interstate commerce required, *de minimis* connection, e.g. bank account can suffice) *U.S. v. Elliott*, 89 F. 3d 1360 (8th Cir. 1996).

## CONCLUSION

When the Complaint and memorandum in opposition to the motion to dismiss were filed, Plaintiffs had a reasonable belief that the Complaint alleging embezzlement and tax fraud, using the mails and wires, in a RICO conspiracy over a period of years, in a pattern of connected acts, including a 2020 fraudulent transfer to defendant that year, could succeed.

"[Plaintiffs] need not advance a winning argument to avoid Rule 11 sanctions. Any other

conclusion would chill an attorney's enthusiasm or creativity in pursuing legal theories, a result that the advisory committee sought to avoid." *Brubaker v. City of Richmond*, 943 F.2d 1363 at 1378 (4th Cir 1991) (quoting *Cleveland Demolition Co. v. Azcon Scrap Corp.*, 827 F.2d 984, 988(4th Cir. 1987).

Dated: New York, New York
August 12, 2024

Respectfully submitted,

SCARINCI & HOLLENBECK LLC
By: /s/ *Dan Brecher*, Esq
Dan Brecher, Esq.
519 Eight Avenue 25th Floor
New York, New York 10018
(212) 286-0747 (office)
(917-861-5057 (cellular)
(212) 808-4155 (facsimile)
dbrecher@sh-law.com

*Attorneys for Plaintiffs*

**VIA ECF and E-mail**

Sage Legal LLC

Emanuel Kataev, Esq.

emanuel@sagelegal.ny

Attorneys for Defendant