UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOBAR HOLDING CORPORATION, et al.,

                              Plaintiffs,

              -against-                                    23-CV-11217 (JGLC)

DAVID HALIO,                                              **OPINION AND ORDER**

                              Defendant.

JESSICA G. L. CLARKE, United States District Judge:

   Plaintiffs allege that Defendant received transfers of funds that should have gone, at least in part, to Plaintiffs. Although Plaintiffs dress up their allegations as violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Plaintiffs do not state facts that meet the high bar that RICO requires. Even if Plaintiffs had done so, their RICO-related claims are time-barred. Accordingly, Defendant's motion to dismiss Plaintiffs' RICO claims is GRANTED and the case is REMANDED to state court. The Court further DENIES Defendant's motion for sanctions. Although Plaintiffs' RICO claims are meritless, the Court finds sanctions unwarranted here.

## BACKGROUND

   The following facts are, unless otherwise noted, taken from the Complaint and presumed to be true for the purposes of this motion. *See LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

   Joan Buck and Barbara Halio, sisters, were co-executrices in the will of their mother, Kitty Buck. ECF No. 1-1 ("Complaint" or "Compl.) ¶ 8. Joan Buck passed away in 2005. *Id*. Plaintiff Robert Buck is the son of Joan Buck and the executor of her estate (the "Estate of Joan Buck"). *Id*. Defendant David Halio is the son of Barbara Halio. *Id*. Jobar Holding Corporation

("Jobar," together with Robert Buck, individually; Robert Buck, as executor of the Estate of Joan Buck; and Robert Buck, individually and as executor of the Estate of Joan Buck, derivatively as shareholders on behalf of Jobar, "Plaintiffs") is a domestic organization that has its offices at 257 Foxhurst Road in Oceanside, New York, the home of Barbara Halio and where David Halio's medical practice is located. *Id*. ¶ 16. Barbara Halio served as president of the inactive family-owned corporation Jobar, as well as the chief executive and operating officer. *Id*. ¶ 8.

Jobar operated a bakery business in Manhattan until 1990. *Id*. ¶ 75. From 1990 through 2005, Jobar continued to own and operate the building where the bakery was located, at 120 West 72 Street in Manhattan (the "Building"). *Id*. On May 12, 2006, Jobar sold the Building for $22,000,000, with net proceeds of $20,500,106. *Id*. ¶¶ 9, 22. After paying the mortgage on the building, fees, bills, taxes, and Jobar shareholders, the remaining sum of $1,500,000 was set aside in a bank's money market account, to earn interest and to be further distributed proportionately to the Jobar shareholders. *Id*. ¶ 9. This was to be done upon establishing that no further claims, disputes, or obligations existed as to the remaining $1,500,000 proceeds of the sale of the building (the "Holdback Funds"). *Id*. After the sale, Jobar had no other operating business. *Id*. At the time of the sale, Robert Buck and the Estate of Joan Buck collectively had a 38% ownership interest in Jobar. *Id*. ¶ 23. David Buck was a 12.5% shareholder in Jobar. *Id*. ¶ 24.

Barbara Halio distributed more than $1,000,000 of the Holdback Funds and derivatives therefrom as loans (the "Loans"). *Id*. ¶ 10. Although the transfers were titled as loans, there were no loan documents, no provisions or payments of interest, and no repayments by David or Barbara Halio of any of the principal or interest for any transfers made to them out of the Jobar account. *Id*. ¶ 2. Barbara Halio made payments totaling more than $500,000 to David Halio, two

of her other children, two of her grandchildren, and her son-in-law. *Id.* ¶¶ 1, 10. Barbara Halio also used some of the Holdback Funds for personal expenditures, including David Halio's medical malpractice insurance premium. *Id.* ¶ 28. These transactions were made without the knowledge of Robert Buck. *Id.* ¶ 10. Barbara Halio did not distribute any funds to Robert Buck or the Estate of Joan Buck. *Id.*

The Complaint alleges that Barbara Halio sent (1) a $20,000 check dated March 2, 2013, as a purported loan to David Halio; (2) a $10,000 check dated April 12, 2013, as a purported loan to David Halio; (3) a $43,996 wire transfer on April 15, 2013, to pay the overdue premium for David Halio's professional malpractice insurance policy; (4) a $50,000 wire transfer on May 3, 2013, to David Halio's bank account; (5) a wire transfer on November 22, 2013, to David Halio's bank account; and (6) a $60,000 wire transfer on December 20, 2013, to David Halio's personal account. *Id.* ¶ 3.

Plaintiffs allege that David Halio was aware that Jobar was no longer conducting any active business after the sale of the Building and that the Loans far exceeded the amount that he was entitled to receive. *Id.* ¶ 24. Plaintiffs further allege that David Halio has provided assistance to Barbara Halio by "receiving, keeping and making false statements as to the fraudulent conveyances he received through Barbara's transfers to him of plaintiffs' funds." *Id.* ¶ 33. David Halio contends that he did not ask for the Loans. *Id.* ¶ 4.

Barbara Halio promised that she would make payments to Robert Buck when her vacation home in Watermill, New York (the "Watermill Property") was sold. *Id.* ¶ 12. Instead, she transferred funds derived from the sale of the Watermill Property to the benefit of her children, grandchildren, and son-in-law. *Id.* She wrote a $30,000 check to David Halio on April 25, 2020, with the proceeds from the sale of the Watermill Property. *Id.*

According to the Complaint, David Halio also filed false and misleading tax documents with the Internal Revenue Service ("IRS") and local tax authorities by virtue of failing to report as income the funds that he received from the Holdback Funds that exceeded his 12.5% ownership rights, as well as other payments sent to him by Barbara Halio, such as the payment of his professional insurance policy premium. *Id.* ¶ 37. The Jobar annual tax returns from 2008 through 2017 also falsely reported the Loans. *Id.* ¶ 85(ii)(c). Plaintiffs allege that by failing to report the Loans and other payments on his income tax returns, David Halio facilitated and enabled Barbara Halio's scheme to loot Jobar. *Id.* ¶ 40.

The Complaint additionally alleges that Barbara and David Halio sent false K-1 Forms. *Id.* ¶ 81. K-1 forms are annual reports filed with the IRS and shareholders by entities such as Jobar and serve as reports as to the individual shareholder's "Share of Current Year Income, Deductions, Credits, and Other Items." *Id.* K-1 forms are sent to shareholders so that shareholders can use them to accurately prepare and report on their own taxable income and deductions to the IRS. *Id.* An accountant for Barbara Halio, David Halio, and Jobar stated that the numbers attributed to the Estate of Joan Buck on the 2014 K-1 ($390,021) and the Robert Buck 2014 K-1 ($104,006) represented funds that Barbara Halio had misappropriated to herself from the Holdback Funds. *Id.* ¶¶ 84, 85(ii)(a)–(b). Plaintiffs allege that the K-1s that Jobar issued each year from 2008 through 2017 contained false statements or omissions. *Id.* ¶ 85(i).

In 2016, Plaintiffs commenced a mandamus proceeding under common law and New York State Business Corporation Law § 624, to require Jobar and Barbara Halio to submit all books, records, papers, and contracts for inspection and examination. *Id.* ¶ 29; *see also Buck v. Jobar Holding Corp.*, No. 605680/2016 (N.Y. Sup. Ct.). Robert Buck was only able to secure a portion of the bank and financial records of Jobar. Compl. ¶ 30. The bank and financial records

revealed that Barbara Halio fraudulently transferred most of the Holdback Funds from Jobar to herself, her family members, or controlled persons. *Id*. ¶ 31.

Plaintiffs are concurrently suing Barbara Halio in an action pending in New York County Supreme Court. *Id*. ¶ 11; *see also Jobar Holding Corp. v. Halio*, No. 655689/2017 (N.Y. Sup. Ct.) (the "State Court Action"). There, Plaintiffs allege that Barbara Halio did not distribute Holdback Funds as required, distributing none to Robert Buck. State Court Action, NYSCEF No. 12. On October 7, 2020, the court dismissed all claims against Barbara Halio, including the civil RICO claim, other than the faithless employee claim brought derivatively on behalf of Jobar. *Id*., NYSCEF No. 184; *see also id*., NYSCEF No. 235 at 41:7–10 ("They failed to allege facts sufficient to support what is a conclusory assertion that there was a pattern of racketeering activities, the existence of an enterprise and proximate cause."). On March 15, 2024, the court granted plaintiff's motion for leave to amend, *id*., NYSCEF No. 269, and on the same day, Plaintiffs filed their Second Amended Complaint, *id*., NYSCEF No. 270. On September 27, 2024, the court denied the motion to dismiss Plaintiffs' Second Amended Complaint. *See id*., NYSCEF No. 306.

## LEGAL STANDARD

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for

relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Id.* at 679. "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Id.* at 678. If a complaint does

not state a plausible claim for relief, it must be dismissed. *Id.* at 679.

## DISCUSSION

The Court first addresses Defendant's statute of limitations argument, holding that

Plaintiffs were on inquiry notice in 2017 such that the statute of limitations has run on Plaintiffs'

RICO claims. Even if the claims were timely, Plaintiffs failed to state any viable RICO claims.

First, the Court finds that Plaintiffs lack RICO standing as to the allegedly fraudulent tax and

corporate reports because Plaintiffs have not demonstrated that such reports caused Plaintiffs

injury. Next, the Court finds that Plaintiffs fail to plead an association-in-fact enterprise because

Plaintiffs have failed to plead facts demonstrating that the alleged members of the association-in-

fact enterprise functioned as a unit. Plaintiffs additionally fail to demonstrate that David Halio

exerted some control over the alleged association-in-fact enterprise. The Court next finds that

Plaintiffs fail to allege facts showing open-ended continuity, such that Plaintiffs fail to show a

pattern of racketeering activity. Plaintiffs fail to state a RICO conspiracy claim because it is

based on the same facts as Plaintiffs' substantive RICO claim. Because the Court dismisses the

only federal claims in this action, the Court declines to exercise supplemental jurisdiction over

the remaining state law claims.[1] Turning to Defendant's motion for sanctions, although finding

that Plaintiffs brought meritless claims, the Court declines to impose sanctions.

## I.    The RICO Claims Are Barred by the Statute of Limitations

Defendant first argues that the statute of limitations has run on Plaintiffs' RICO claims.

"The statute of limitations for a civil RICO claim is four years." *Cohen v. S.A.C. Trading Corp.*,

711 F.3d 353, 361 (2d Cir. 2013) (citing *Rotella v. Wood*, 528 U.S. 549, 552 (2000)). The

discovery accrual rule applies in RICO cases, "under which the limitations period begins to run

when the plaintiff discovers or should have discovered the RICO injury." *Id*. (internal citation

and quotation marks omitted). In other words, "the limitations period does not begin to run until

the plaintiff has actual or inquiry notice of the injury." *Id*. (internal citation omitted).

"A duty to inquire is triggered by information that relates directly to the

misrepresentations and omissions the Plaintiffs later allege in their action against the

defendants," although the information "need not detail every aspect of the subsequently alleged

fraudulent scheme." *Id*. (internal citations and quotation marks omitted). "[W]hether a plaintiff

had sufficient facts to place it on inquiry notice is often inappropriate for resolution on a motion

to dismiss under Rule 12(b)(6)." *LC Cap. Partners, LP v. Frontier Ins. Grp., Inc.*, 318 F.3d 148,

156 (2d Cir. 2003) (internal citation and quotation marks omitted). However, where the facts

needed for the inquiry notice determination "can be gleaned from the complaint and papers

---

[1] Defendant also argues that abstention under the *Colorado River* doctrine applies. However, this action is not parallel to the State Court Action and therefore, *Colorado River* abstention is unwarranted. *See Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 101 (2d Cir. 2012); *DDR Const. Servs., Inc. v. Siemens Indus., Inc.,* 770 F. Supp. 2d 627, 645 (S.D.N.Y. 2011) ("[L]awsuits are not parallel, and *Colorado River* abstention is not appropriate, simply because some factual and legal issues involved in a later RICO action in federal court overlap with the issues involved in an earlier state court action.")

integral to the complaint, resolution of the issue on a motion to dismiss is appropriate." *Id*. (cleaned up).

David Halio argues that Robert Buck had inquiry notice as to David Halio's alleged involvement since in or about 2017, following Robert Buck's receipt of records in *Buck v. Jobar Holding Corp.*, No. 605680/2016. ECF No. 13 ("Mot.") at 9. He contends that the court directed Barbara Halio to submit the documents requested, and that there is nothing to indicate that Barbara Halio failed to comply with the court's order. *Id*. Plaintiffs acknowledge that they received bank and financial records through those proceedings and that they "reveal[ed] that Barbara fraudulently transferred most of the Holdback [Funds] from Jobar to herself, her family members, including defendant David, or controlled persons, entities and accounts to whom it was fraudulent to transfer the funds." Compl. ¶ 31. Plaintiffs also state that Robert Buck was only able to secure a portion of the bank and financial records and that Plaintiffs were unaware of certain facts related to allegedly fraudulent conveyances until David Halio's January 19, 2023 deposition in the State Court Action. *Id*. ¶¶ 30–31, 54–55.

The bank and financial records Plaintiffs received, "reveal[ing] that Barbara fraudulently transferred most of the Holdback [Funds] from Jobar," were sufficient to have put Plaintiffs on inquiry notice of Plaintiffs' alleged injuries here. The fact that Plaintiffs did not know the full extent of Defendant's alleged fraud does not save these claims. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 427 (2d Cir. 2008) (stating that the triggering information "need not detail every aspect of the alleged fraudulent scheme"). Accordingly, the RICO claims are dismissed as time barred. Even if the RICO claims were not time barred, Plaintiffs still fail to state a claim and would be dismissed, as discussed *infra* Section II.

## II.    Plaintiffs Fail to State a Substantive Civil RICO Claim

Plaintiffs' RICO cause of action against Defendant is brought pursuant to 18 U.S.C. § 1962(c). To establish a civil RICO claim pursuant to 18 U.S.C. § 1962(c), "a plaintiff must plead the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Needham & Co, LLC v. Access Staffing, LLC.*, No. 15-CV-2487 (NRB), 2016 WL 4399288, at *12 (S.D.N.Y. Aug. 12, 2016) (quoting *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001)). "RICO defines racketeering activity to mean 'any act which is indictable' under specified provisions of Title 18," including mail, wire, and bank fraud. *Yien-Koo King v. Wang*, No. 14-CV-7694 (LJL), 2020 WL 6875403, at *20 (S.D.N.Y. Nov. 23, 2020); *see also* 18 U.S.C. § 1961(1).

"[P]laintiffs have often been overzealous in pursuing RICO claims, flooding federal courts by dressing up run-of-the-mill fraud claims as RICO violations." *DLJ Mortg. Cap., Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 236 (E.D.N.Y. 2010). Accordingly "courts have an obligation to scrutinize civil RICO claims early in the litigation-to separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." *Rosenson v. Mordowitz*, No. 11-CV-6145 (JPO), 2012 WL 3631308, at *5 (S.D.N.Y. Aug. 23, 2012); *see also Acklin v. Eichner*, No. 20-CV-7042 (GHW), 2021 WL 4442819, at *5 (S.D.N.Y. Sept. 27, 2021) (internal quotation marks and citation omitted) (noting that courts carefully scrutinize RICO claims at the motion to dismiss stage because "civil RICO has resulted in a flood of what are and should be state court cases that are being reframed and brought in federal court as RICO actions because of the carrot of treble recovery and the availability of a federal forum"); *Demaree v. Castro*, No. 22-CV-8772 (CM), 2023 WL 6465881, at *5 (S.D.N.Y. Oct. 4, 2023) ("[P]laintiffs asserting RICO frequently miss the mark and have their cases dismissed at the outset.").

This case is essentially about a family dispute where Defendant received money from his mother that allegedly belonged to Plaintiffs. This is not the "rare complaint that actually states a claim for civil RICO." *Rosenson*, 2012 WL 3631308, at \*5. Instead, Plaintiffs attempt to dress up what seem to be conversion claims – as well as claims about allegedly fraudulent tax and corporate reports, which they lack RICO standing to pursue – as ones for civil RICO and conspiracy. For these and the additional reasons stated below, Plaintiffs' allegations fail to meet the high standard required for such claims.

### A.  Plaintiffs Lack RICO Standing as to Certain Allegations

Part of Plaintiffs' RICO claim relies on allegations that Defendant, along with Barbara Halio, created and filed fraudulent tax documents and other corporate reports. Plaintiffs, however, do not adequately demonstrate RICO standing as to these allegations. "To satisfy RICO's standing requirements, a plaintiff must demonstrate, (1) a violation of section 1962; (2) injury to business or property; and (3) causation of the injury by the violation." *Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135 (2d Cir. 2003) (internal citation and quotation marks omitted). Standing in the RICO context is limited "to those plaintiffs who allege that the asserted RICO violation was the legal, or proximate, cause of their injury, as well as a logical, or but for, cause." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283–84 (2d Cir. 2006) (internal citation and quotation marks omitted). A plaintiff "does not have standing if he suffered an injury that was indirectly (and hence not proximately) caused by the racketeering activity or RICO predicate acts, even though the injury was proximately caused by some non-RICO violations committed by the defendants." *Baisch v. Gallina*, 346 F.3d 366, 373 (2d Cir. 2003); *see also Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1344 (2d Cir. 1994) (internal citation omitted) (stating that standing to assert a RICO conspiracy claim "may be founded only upon injury from overt acts

that are also section 1961 predicate acts, and not upon any and all overt acts furthering a RICO conspiracy"). "The defendant's racketeering activity must have caused the plaintiff to suffer economic loss." *Makowski v. United Bhd. of Carpenters & Joiners of Am.*, No. 08-CV-6150 (PAC), 2010 WL 3026510, at *8 (S.D.N.Y. Aug. 2, 2010) (internal citation and quotation marks omitted).

Plaintiffs allege that the Loans included funds that should have been transferred to Robert Buck and the Estate of Joan Buck but were instead transferred to Defendant and other third parties. *See* Compl. ¶ 13 ("It is beyond dispute that the Estate of Joan Buck and Robert Buck have not received a nickel of the unpaid 38% of the Holdback [Funds], plus years of unpaid interest on the withheld funds."). This is a cognizable injury as to Robert Buck and the Estate of Joan Buck. And, the cause of this injury as alleged in the Complaint is clear: the actions of Barbara Halio in distributing funds to Defendant. This conduct is entirely distinct from allegedly fraudulent tax or corporate reports. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458 (2006). There is simply no connection between alleged fraudulent tax or corporate reports and these injuries. Plaintiffs have also not otherwise alleged how any fraudulent tax or corporate reports could have caused or did cause any other injury to any of Plaintiffs.

Accordingly, the Court will analyze Plaintiffs' RICO claim only with respect to the Loans; Plaintiffs do not have RICO standing as to the allegedly fraudulent tax and corporate reports. *See Amsterdam Tobacco Inc. v. Philip Morris Inc.*, 107 F. Supp. 2d 210, 219 (S.D.N.Y. 2000) ("Where, as here, the primary purpose of an alleged racketeering enterprise is to avoid paying taxes or otherwise defraud the government, indirectly injured parties do not have standing to bring RICO claims.").

11

### A.  Plaintiffs Fail to Plead an Association-In-Fact Enterprise

Plaintiffs fail to state a substantive RICO claim because they fail to sufficiently plead an association-in-fact enterprise. An "association-in-fact enterprise is a group of persons associated together for a common purpose engaging in a course of conduct." *Boyle v. United States*, 556 U.S. 938, 946 (2009) (internal citation and quotation marks omitted). It consists of three features: (1) a purpose, (2) relationships among the individuals associated with the enterprise, and (3) longevity sufficient to permit the associates to pursue the purpose of the enterprise. *Id.* "The enterprise must also exist 'separate and apart from the pattern of activity in which it engages.'" *D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 667 (2d Cir. 2014) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)).

Plaintiffs argue that the Complaint alleges an enterprise between David Halio, Barbara Halio, and others, the purpose of which was to embezzle Plaintiffs' funds. Compl. ¶ 74. Plaintiffs, however, have not alleged any facts that such enterprise "was an ongoing organization, formal or informal, or any evidence that the various associates of the alleged enterprise functioned as a continuing unit." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) (internal citation and quotation marks omitted). Plaintiffs also have not advanced any factual allegations "regarding the hierarchy, organization, and activities of this alleged association-in-fact enterprise, from which [the Court] could fairly conclude that its members functioned as a unit." *Id.* (cleaned up). Plaintiffs fail to make any concrete factual assertions as to the mechanics of the interactions between David Halio and Barbara Halio. Neither do Plaintiffs allege facts as to how Jobar was a part of the purported association-in-fact enterprise, apart from the Loans deriving from funds from the sale of Jobar's building. Accordingly, Plaintiffs have failed to plead the existence of an association-in-fact enterprise.

**B.  Plaintiffs Fail to Plead that Defendant Conducted the Affairs of the Alleged Association-in-Fact Enterprise**

The Complaint also fails to state a claim because it does not sufficiently allege that David Halio "conducted" the affairs of the alleged association-in-fact enterprise. "RICO liability does not automatically extend to RICO 'persons' associated with an enterprise. To be held liable under § 1962(c), the defendant person must 'conduct or participate in the conduct of such enterprise's affairs.'" *Palatkevich v. Choupak*, No. 12-CV-1681 (CM), 2014 WL 1509236, at *15 (S.D.N.Y. Jan. 24, 2014) (quoting 18 U.S.C. § 1962(c)). "In order to 'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one must have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). RICO liability is not limited to those with primary responsibility for the enterprise's affairs, nor is RICO liability limited to those with a formal position in the enterprise. *Id.* However, a "defendant does not 'direct' an enterprise's affairs under § 1962(c) merely by engaging in wrongful conduct that assists the enterprise." *Redtail Leasing, Inc. v. Bellezza*, No. 95-CV-5191 (JFK), 1997 WL 603496, at *5 (S.D.N.Y. Sept. 30, 1997).

The Complaint alleges that David Halio "aided and abetted" Barbara Halio's scheme by "receiving, keeping and making false statements as to the fraudulent conveyances he received through Barbara's transfers to him of plaintiffs' funds." Compl. ¶ 33. By virtue of being a "substantial recipient of looted funds," the Complaint claims that David Halio "undoubtedly knew that moneys were being looted from the Holdback [Funds]." *Id.* ¶ 35. The Complaint additionally claims that David Halio "facilitated Barbara's looting of the Holdback [Funds]" by filing false tax documents that failed to properly report his income. *Id.* ¶ 36–38. And Plaintiffs attempt to argue in their opposition that David Halio participated in directing the enterprise because "how did [David Halio's] mother come to wire the exact amount of his professional

13

medical malpractice insurance premium of $43,996 to his insurer out of the Jobar Holdback account; and, how did she get the insurer's wiring instructions, if not from David, after his check to the insurer had bounced?" *See* ECF No. 17 ("Opp.") at 7.

These allegations – and, in part, arguments made in opposition rather than factual allegations – do not amount to direction or control. Instead, they, at most, "merely indicate[] that [Defendant] engaged in wrongful conduct that assisted" Barbara Halio's conduct. *See Palatkevich*, 2014 WL 1509236, at *16 (internal citation and quotation marks omitted). Plaintiffs utterly fail to allege that Defendant directed the affairs of the alleged enterprise. For this reason, the Complaint fails to state a claim as its allegations are insufficient to fulfill the conduct element of Section 1962(c).

### C.  Plaintiffs Fail to Establish a Pattern of Racketeering Activity

Finally, Plaintiffs fail to state a substantive RICO claim because they fail to establish a pattern of racketeering activity. "A plaintiff in a RICO action must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time)." *First Cap.*, 385 F.3d at 180 (internal citation omitted). These patterns are also referred to as open-ended or closed-ended continuity.

Defendant does not argue that the predicate acts constituting the pattern were insufficiently pleaded, and so the Court assumes without deciding that the predicate acts were sufficiently pleaded. Here, the predicate acts that Plaintiffs allege are (1) the purported loans to David Halio, made through wire transfers and checks and (2) false tax documents filed with the IRS. As discussed *supra* Section II(A), Plaintiffs do not have RICO standing as to the allegedly fraudulent tax and corporate documents; thus, the Court only looks to the Loans for the purposes

of the continuity analysis. As to the purported Loans, the Complaint alleges that Barbara Halio

sent six transfers in 2013 and one in 2020. Compl. ¶¶ 3, 12.

Defendant argues that Plaintiffs have failed to plead both open-ended and closed-ended

continuity. Mot. at 19, 21–23. Plaintiffs only argue that there is an "open-ended pattern," Opp. at

18; thus, the Court only analyzes whether there is open-ended continuity.[2] "To satisfy open-

ended continuity, the plaintiff need not show that the predicates extended over a substantial

period of time but must show that there was a threat of continuing criminal activity beyond the

period during which the predicate acts were performed." *First Cap.*, 385 F.3d at 180 (internal

citation omitted). There are two ways to show open-ended continuity:

> (1) where the acts of the defendant or the enterprise are inherently unlawful, such
> as murder or obstruction of justice, and are in pursuit of inherently unlawful
> goals, such as narcotics trafficking or embezzlement, or (2) where the enterprise
> primarily conducts a legitimate business but there is some evidence from which it
> may be inferred that the predicate acts were the regular way of operating that
> business, or that the nature of the predicate acts themselves implies a threat of
> continued criminal activity.

*Grace Int'l Assembly of God v. Festa*, 797 F. App'x 603, 606 (2d Cir. 2019) (quoting *United*

*States v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir. 1995) and *Cofacredit, S.A. v. Windsor Plumbing*

*Supply Co.*, 187 F.3d 229, 243 (2d Cir. 1999)) (internal quotation marks omitted).

The Court agrees with Defendant that the "inherently unlawful" category is inapplicable

here. The predicate acts alleged in the Complaint consist of mail, wire, and bank fraud. It is well-

established that fraud does not imply a threat of continued criminal activity in the RICO

---

[2] The Court declines to analyze whether there is closed-ended continuity. "[W]hen a party fails adequately to present arguments in a brief, a court may properly consider those arguments abandoned, especially in the case of a counseled party where a court may infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned." *Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) (cleaned up).

continuity context. *See Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 136–37 (S.D.N.Y. 2023) (collecting cases).

Next, the Court turns to whether the predicate acts were part of Defendant's regular way of doing business or whether the predicate acts imply a threat of continued criminal activity. "RICO caselaw disfavors finding continuity where the alleged scheme targeted few victims . . . and is inherently terminable . . . ." *Black v. Ganieva*, 619 F. Supp. 3d 309, 346 (S.D.N.Y. 2022), *aff'd*, No. 22-1524-CV, 2023 WL 2317173 (2d Cir. Mar. 2, 2023). Here, the Complaint alleges that Barbara Halio sent six transfers in 2013 and one in 2020, which is insufficient to make out a claim of racketeering.

First, such few transfers – here, only seven – does not support a finding of continuity. *See Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 407–08 (S.D.N.Y. 2013) (holding that six purported instances of fraud over eight years did not make out a claim of racketeering based on a theory that such fraud was the regular way of conducting business). Second, the small number of victims weighs against a finding of continuity. *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 186 (2d Cir. 2008) (finding allegations of "a serious, but discrete and relatively short-lived scheme to defraud a handful of victims" to be insufficient to establish open-ended continuity). And third, there are no allegations that the alleged RICO acts are continuing or likely to continue, especially when the last relevant allegation is from 2020. *See Lefkowitz v. Bank of New York*, No. 01-CV-6252 (VM), 2003 WL 22480049, at *9 (S.D.N.Y. Oct. 31, 2003), *aff'd in part, rev'd in part on other grounds and remanded*, 528 F.3d 102 (2d Cir. 2007) ("There is no indication in [plaintiff's] RICO counts that Defendants will continue their alleged scheme once the probate proceedings in the [defendants'] estates are completed. Thus, the Court finds that there is no open-ended continuity sufficiently asserted here.").

Accordingly, Plaintiffs have not pleaded open-ended continuity and the Complaint fails to state a substantive RICO claim. Because Plaintiffs have not pleaded continuity, the Court declines to address Defendant's arguments as to whether the Complaint meets RICO's relatedness requirement.

## III.    Plaintiffs Fail to State a RICO Conspiracy Claim

Like the substantive RICO claim, Plaintiffs' RICO conspiracy claim fails. The Complaint's RICO conspiracy allegations, as pleaded, are derivative of its allegations of a substantive RICO violation. For substantially the same reasons that the Complaint fails to plead a substantive RICO violation, it fails to plead a RICO conspiracy, and the RICO conspiracy claim is dismissed. *See First Cap.*, 385 F.3d at 182 (affirming district court's dismissal of a RICO conspiracy violation based on plaintiffs' failure to allege a substantive RICO violation); *D. Penguin Bros.*, 587 F. App'x at 669 ("The failure to state a claim for a substantive RICO violation, moreover, is fatal to plaintiffs' RICO conspiracy claim under § 1962(d).").

## IV.    The Court Declines to Exercise Supplemental Jurisdiction

District courts may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional 'values of judicial economy, convenience, fairness, and comity,' in deciding whether to exercise jurisdiction." *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id*. at 122 (quoting *Cohill*, 484 U.S. at 350 n.7).

This is such a "usual case." Plaintiffs' federal law claims are dismissed here, on a motion to dismiss, prior to the investment of significant judicial resources. Thus, the Court remands Plaintiffs' state law claims to the Supreme Court of the State of New York, County of New York. *See In the Matter of the Application of Hampshire Recreation, LLC v. Vill. of Mamaroneck*, No. 14-CV-7228 (CS), 2016 WL 1181727, at *15 (S.D.N.Y. Mar. 25, 2016), *aff'd sub nom. Hampshire Recreation, LLC v. The Vill. of Mamaroneck*, 664 F. App'x 98 (2d Cir. 2016) (internal citation omitted) ("[W]here the Court declines to exercise supplemental jurisdiction, it has discretion to remand the case back to state court."); *see also* Mot. at 2 ("[T]his Court should . . . exile this case back to state court where it belongs.").

## V.    The Court Declines to Issue Sanctions

Defendant moves for sanctions pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and/or the Court's inherent power, arguing that the RICO claims were frivolous. ECF No. 24 at 2, 5. Although Plaintiffs' RICO claims are meritless, the Court does not find that Plaintiffs' actions rise to the level of sanctionable conduct.

### A.    Rule 11(b)

Rule 11 requires an attorney's certification that, for any filing, "the claims, defenses, and other legal contentions are warranted by existing law . . . " and "the factual contentions have evidentiary support . . . ." Fed. R. Civ. P. 11(b)(2)–(3). It "thus imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Galin v. Hamada*, 283 F. Supp. 3d 189, 201 (S.D.N.Y. 2017), *aff'd*, 753 F. App'x 3 (2d Cir. 2018) (quoting *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998)).

"[S]anctions are appropriate only where 'it should have been patently obvious to any attorney who had familiarized himself or herself with the law' that the action was frivolous." *Id*.

(quoting *Four Keys Leasing & Maint. Corp. v. Simithis*, 849 F.2d 770, 773 (2d Cir. 1988)). "The imposition of Rule 11 sanctions is discretionary and should be reserved for extreme cases, and 'all doubts should be resolved in favor of the signing attorney.'" *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 626 (S.D.N.Y. 2016), *aff'd*, 683 F. App'x 33 (2d Cir. 2017) (quoting *K.M.B. Warehouse Distribs., Inc. v. Walker Mfg. Co.*, 61 F.3d 123, 131 (2d Cir. 1995)).

First, Defendant argues conclusorily that "Plaintiffs did not conduct a reasonable inquiry to determine whether there was a factual and/or legally sufficient basis to continue with the instant RICO Complaint." ECF No. 24 at 7. However, as Plaintiffs rebut, Plaintiffs relied on discovery in the State Court Action, including Defendant's deposition and Barbara Halio's affidavit. ECF No. 29 at 2.

Defendant next argues that Plaintiffs were on notice that their RICO claims lacked merit, both from Justice Cohen's decision in the State Court Action and Defendant's Rule 11 safe harbor notice. ECF No. 24 at 4, 8. Although Plaintiffs' RICO claims are meritless, the Court does not find that the inclusion of such claims in the instant Complaint is sanctionable. *See Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018) ("We conclude, however, that although [plaintiff's] amended complaint ultimately failed to state a RICO claim, his claims were not so obviously foreclosed by precedent as to make them legally indefensible."); *Chester Park View, LLC v. Schlesinger*, No. 23-CV-5432 (CS), 2024 WL 2785140, at *15 (S.D.N.Y. May 29, 2024) ("Plaintiffs' RICO claims are without merit, but I do not consider them to be so frivolous as to warrant sanctions.").

Defendant also alleges that Plaintiffs filed the action "subjecting Defendant to litigate and force them to expend attorneys' fees as a means to pressure Dr. Halio's mother to pay Plaintiffs more than what they were entitled to due to the cost of litigation." ECF No. 24 at 9. Defendant

provides no support for this claim. And, although the Court finds that Plaintiffs' civil RICO-related claims lack merit, the Court has not concluded that Plaintiffs have no viable claims against Defendant.

Although Defendant cites to three cases where courts granted Rule 11 sanctions in the RICO context, all are distinguishable. *See* ECF No. 24 at 12. In *LCS Group, LLC v. Shire LLC*, plaintiff "failed to prosecute [its RICO] claim by refusing to address the merits in its opposition brief while simultaneously refusing to dismiss the claim with prejudice." No. 18-CV-2688 (AT), 2019 WL 1234848, at *15–16 (S.D.N.Y. Mar. 8, 2019). And in the two other cases Defendant cites, the courts held that there was no evidence to support plaintiffs' allegations of RICO predicate acts and plaintiffs' claims were presented for an improper purpose. *See Edmonds v. Seavey*, No. 08-CV-5646 (HB), 2009 WL 4404815, at *3–4 (S.D.N.Y. Dec. 2, 2009); *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 660–61 (S.D.N.Y. 1996). Accordingly, the Court declines to issue sanctions pursuant to Rule 11(b).

### B.  28 U.S.C. § 1927 and the Court's Inherent Power

Defendant also moves for sanctions under 28 U.S.C. § 1927 and the Court's inherent power, arguing that "Plaintiffs and their counsel have multiplied the proceedings in this case unreasonably and vexatiously." ECF No. 24 at 12. "To award attorney's fees against an attorney under § 1927, a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith – that is, motivated by improper purposes such as harassment or delay." *Chester Park View*, 2024 WL 2785140, at *15 (internal citation and quotation marks omitted). The Court has inherent authority to sanction any party that "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *United States v.*

*Prevezon Holdings, Ltd.*, 305 F. Supp. 3d 468, 478 (S.D.N.Y. 2018) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)).

"In practice, the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both." *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 144 (2d Cir. 2012) (internal citation and quotation marks omitted). Accordingly, "requests for sanctions under Section 1927 and pursuant to the court's inherent authority may be decided in a single inquiry." *Prevezon Holdings*, 305 F. Supp. 3d at 478.

Notwithstanding that Defendant relies on the same arguments for sanctions under 28 U.S.C. § 1927 and its inherent power as Defendant did under Rule 11(b), the Court finds that sanctions are not warranted. The Court has not been presented with evidence that Plaintiffs' claims were brought in bad faith. Defendant has not demonstrated that these claims were brought for a harassing purpose – particularly here, where Plaintiffs may have some viable claims against Defendant. There is also no indication that these claims were brought as a means to delay any action or relief or to forum shop. Plaintiffs brought the action in state court, after which Defendant removed the case to federal court, and filed motions to dismiss and for sanctions. For these reasons, the Court declines to issue sanctions under 28 U.S.C. § 1927 or pursuant to its inherent power.

### C.  Failure to Redact

In his reply, Defendant also requests that the Court issues sanctions for Plaintiffs' failure to redact information in a filing as required by Rule 5.2. ECF No. 30 at 1. First, the information

21

that Plaintiffs failed to redact is that of one of the Plaintiffs, not Defendant. For that reason alone, the Court sees no reason to issue sanctions. Second, upon filing the unredacted documents, Plaintiffs requested that the documents be placed upon temporary seal on an emergency basis and subsequently properly requested the Court's permission to file redacted versions of the documents.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED and the RICO causes of action are dismissed. Defendant's motion for sanctions is DENIED. The case is REMANDED to the Supreme Court of the State of New York, County of New York.

Dated: September 30, 2024
       New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge